Carolyn PETERS, Lee A. Peters,
Plaintiffs–Appellants,

v.

FIVE STAR MARINE SERVICE, et al.,
Defendants–Appellees.

No. 89–3178
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

April 3, 1990.

Stephen B. Murray, Arthur J. Brewster, New Orleans, La., for plaintiffs-appellants.

Edward R. Getz, Houston, Tex., David L. Carrigee, Burke & Mayer, New Orleans, La., for Marathon Oil Co.

Hal C. Welch, Allen J. Krouse, III, Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, New Orleans, La., for 5 Star Marine Service.

Before CLARK, Chief Judge, WILLIAMS and DUHÉ, Circuit Judges.

PER CURIAM:

I.

On November 3, 1987, Lee Peters was employed by Dual Drilling Company as a roustabout on an offshore drilling platform. When a supply boat, the M/V BARI LYNN II, docked at the platform, Peters and another roustabout, Wayne Chaisson, were instructed to unload machinery and goods from the boat onto the platform. As the seas were rough that evening, with waves cresting at from ten to twelve feet, a discussion was held among the supervisors present for Dual Drilling and Marathon Oil Company as to whether the offloading should be postponed. The supervisors decided to begin offloading despite the rough seas.

Peters and a co-worker, Wayne Chaisson, were lowered to the BARI LYNN II and began loading machinery and parts into

baskets which would then be hauled onto the drilling platform by a crane. During this process, Peters slipped and landed on his back and hip. He reported the accident to his superiors. Although Peters soon began experiencing pain in his back and hip, he continued to work through that week. Peters then went ashore and visited a physician. The injury to Peters' back was treated with physical therapy and a back brace. Surgery has been recommended, but not accomplished. Medical testimony proposed that even with favorable surgical results, Peters would not be able to return to his former occupation because of limitations on his ability to move and to lift weights over fifty pounds.

Peters and his wife sued Marathon Oil Company, the supervisor of the drilling operation, and Five Star Marine Service, the owner of the M/V BARI LYNN. The plaintiffs claimed at trial that offloading operations should have been postponed by Marathon because of the rough seas. Peters also argued that Five Star allowed diesel fuel to spill onto the deck of the BARI LYNN II and that he slipped on this fuel. Finally, he stated that the drilling tools he was attempting to offload were improperly stored on the BARI LYNN II causing them to roll around the deck. This allegedly caused a hazardous situation for the roustabouts, who had to retrieve the tools before offloading them. The jury held for the defendants.

Peters now appeals, stating that the trial judge erred in two evidentiary rulings. We affirm.

## II.

### A. Expert Testimony

■ Peters first argues that the trial judge erred in refusing to allow his maritime operations expert to testify as an expert witness under Fed.R.Evid. 702. Peters sought to introduce the testimony of Captain Claude Davenport, a consultant in the maritime industry. Davenport was to testify as to the BARI LYNN II's obligation to keep the deck clean of diesel fuel and to keep cargo properly stowed, the hazards of offloading a vessel in seas of over four to five feet, and the responsibility of the master and crew of a vessel to end offloading procedures when dangerous conditions exist. This testimony would have supported Peters' three theories of liability: that the weather conditions were unsafe for offloading, that Peters slipped on diesel fuel spilled on the deck of the vessel, and that Peters fell while attempting the hazardous job of offloading improperly stored cargo.

After hearing Davenport's qualifications and counsel's explanation of what his testimony would entail, the trial judge disallowed the testimony. In later explaining this decision to the jury, he stated:

My ruling that [Davenport] is not going to testify has nothing to do with his competence or lack of competence, or his experience or lack thereof, but rather, I ruled that the subject matter that he was going to discuss, and the opinions that he was going to express to you are matters that you can competently deal with based upon your common sense and your knowledge of the world, things such as waves and whether they are dangerous, and seas, and that sort of thing. Unlike if we held up an x-ray to the jury and said "Look, see this broken bone," you wouldn't see it; at least, you wouldn't see a lot of them, I promise you, and you would need a physician to tell you that that's a broken bone.

The kind of testimony that the Captain was going to offer was not that kind of testimony, but rather, the kind of things that you and I encounter in our normal everyday living, and not like an x-ray, but things that you can handle without anybody giving opinions to you. They are the kind of things within the knowledge of typical people, and that's why I ruled that that testimony was not going to be offered.

The trial judge analyzed the propriety of the expert's proffered testimony in the method prescribed by the Advisory Committee Notes to Fed.R.Evid. 702: "[w]hether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier." The deci-

sion of a trial judge on whether to allow particular expert testimony is given broad discretion and will only be reversed if the decision is manifestly erroneous. *Eymard v. Pan American World Airways*, 795 F.2d 1230, 1233 (5th Cir.1986).

Peters argues that in a recent unpublished opinion, we reversed the district court for disallowing expert testimony on similar facts. *Smith v. United Gas Pipeline Co.*, 857 F.2d 1471 (5th Cir.1988). In that case the trial judge refused to allow the plaintiff's maritime operations expert to testify as to the reasonableness of a ship-to-ship transfer of machinery during rough seas. The plaintiff had been injured during the transfer. We reversed the exclusion of the testimony. In *Smith*, however, the jury was asked to gauge the reasonableness of using a ship's crane equipped with a "headache ball" and a shackle without a "tag line" while the two ships were stern-to-stern in heavy seas, taking into account the backwash caused by the propellers of both vessels. The trial judge abused his discretion in deciding that an analysis of the confluence of these factors was within the realm of the average juror's knowledge and experience.

To the contrary, the Peters' jury was asked to decided whether it was reasonable for an employer to instruct his employee to manually move equipment on the deck of a boat during heavy seas. Additionally, the jury was to assess the possibilities that the cargo had been improperly stowed, *i.e.*, was rolling around on the deck instead of being lashed down, and that spilled diesel fuel had made the deck of the ship slippery. The trial judge correctly decided that the jury could adeptly assess this situation using only their common experience and knowledge. Expert testimony was unnecessary, and thus the decision to exclude the testimony was within the discretion of the trial judge.

### B. Accident Reports

■ Peters next argues that the trial judge erred in refusing to admit into evidence the accident report forms that were completed by Dual and Marathon after Pe-

ters' fall. The reports include Peters' own description of the accident, an "accident witness summary" written by Wayne Chaisson, and general information supplied by Dual and Marathon supervisors. The trial judge granted a motion in limine offered by the defendants to exclude the documents as hearsay. Peters now contends that the reports were admissible under the business documents exception to the hearsay rule, Fed.R.Evid. 803(6).

A Rule 803(6) analysis is unnecessary here because any error caused by the exclusion of the reports was harmless. *See* Fed.R.Civ.P. 61. All of the information available from the reports was made available to the jury through the testimony of Peters, Chaisson, and employees of Dual and Marathon. As Peters states in his appellate brief, "all of the individuals who provided information in the reports and the makers of the reports testified at trial and were subject to cross examination." Peters does not contend that the testimony of these witnesses varies from the information contained in the reports. The exclusion of the reports, therefore, could not have affected Peters' substantial rights.

### III.

The judgment of the district court is AFFIRMED.