**Gerald BROWN, and Charlotte Brown, Plaintiffs–Appellants,**

**v.**

**PARKER–HANNIFIN CORP., Defendant–Appellee.**

No. 89–4932.

United States Court of Appeals, Fifth Circuit.

Dec. 14, 1990.

William H. Goforth, Lafayette, La., for plaintiffs-appellants.

William C. Kaufman, Seale, Smith & Phelps, Baton Rouge, La., Donald C. Mark, Jr., Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, Minn., for defendant-appellee.

Before WISDOM, GARWOOD, and JOLLY, Circuit Judges.

WISDOM, Circuit Judge:

Gerald Brown brought this action against Parker–Hannifin Corporation ("Parker–Hannifin") to recover for injuries sustained while he was pressure testing a piece of oil field equipment. Brown alleged that either a defect in a quick release coupling manufactured by Parker–Hannifin, or the failure of Parker–Hannifin to label the coupling with its pressure rating, caused his injuries. The district court, at the close of plaintiff's case, granted a directed verdict in favor of Parker–Hannifin holding that Brown had failed to introduce evidence sufficient to enable a reasonable jury to find a defect in the coupling or the failure to label the coupling with its pressure rating caused the accident. We affirm.

I

The quick release coupling at issue has, of course, two sides—a male and a female. Each side contains a flow channel, a ball, a spring, and a seat. If the two sides or halves of the coupling are *not* connected, the spring pushes the ball into the seat, sealing the flow channel through each side of the coupling. If the two sides are connected, the two balls touch and prevent each other from seating. This permits fluid to flow through the coupling. In reviewing the directed verdict, we evaluate the evidence in the light most favorable to the plaintiff.[1] From that perspective, a reasonable jury could have found the accident to have occurred in the following manner.

Brown, an employee of Pageco Tools, was pressure testing a metal pipe, known as a chicksan, or swivel, hose. Pageco employees routinely pressure-tested such pipe. On the day of the accident, Brown connected the chicksan hose to a water-pump using a variety of fittings and connectors, including a quick release coupling manufactured by Parker–Hannifin (the "coupling").[2] To pressure test the chicksan hose, Brown would pump water into the chicksan hose under high pressure[3] and check for leaks. On the day of the accident, when the pressure had reached five thousand psi, Brown noticed a leak around the female side of the coupling. He turned off the pump and relieved the pressure on the system by opening a vent valve near the water pump. Brown then disconnected the two halves of the coupling and replaced the female side of the coupling. Before he reconnected the two sides of the coupling, he noticed some water around a hammer union, one of the fittings used to connect the chicksan hose to the male side of the coupling. He took a small sledge hammer and tightened up the union. Brown then moved to reconnect the two sides of the coupling to resume the pressure test. Before he could reconnect the two sides, a threaded pipe bushing and

---

1. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986); *Boeing v. Shipman,* 411 F.2d 365, 374–75 (5th Cir.1969) (en banc).

2. Parker–Hannifin argues that the plaintiff presented insufficient evidence to establish that Parker–Hannifin manufactured the coupling used on the date of the accident. We need not address this issue because of our resolution of the causation question, but we assume for purpose of the appeal that Parker–Hannifin did manufacture the coupling.

3. The chicksan hoses were tested at pressures up to ten thousand pounds per square inch (psi).

nipple, another fitting connecting the chicksan hose to the male side of the coupling, burst, and a stream of pressurized water struck Brown, injuring him.

While numerous witnesses testified to other versions of the accident,[4] we find that a reasonable jury could accept Brown's version as true; therefore, we treat his version as true in resolving this appeal. Brown advances the following theory of causation to support his right to recover from Parker–Hannifin for his injuries.

Brown begins with the proposition that if the coupling had been working properly, there should have been no pressure in the fittings connecting the chicksan hose to the male side of the coupling. We agree. If the coupling had been working properly and if Brown actually released the pressure, as he testified at trial, there should have been no pressure in the fittings connecting the chicksan hose to the male side of the coupling. This suggests two possibilities: 1) Brown perjured himself or 2) the coupling did not function properly. In reviewing a directed verdict, we need not decide which possibility is more likely to be true, but accept the possibility more favorable to Brown, if a reasonable jury could accept it. It is a close question, but we hold that a reasonable jury could find that the coupling did not function properly, resulting in the trapped pressure that injured Brown.

■ The failure of the coupling, however, does not establish the liability of Parker–Hannifin. Sooner or later, all mechanical parts wear out and fail. To recover from Parker–Hannifin, therefore, Brown had to show not only that the coupling failed but also that a defect in the coupling, or the failure to label the coupling with its pressure rating, caused the failure.[5]

In making this showing, Brown sought to introduce the testimony of Stephen Killingsworth, an assistant professor of electrical engineering. Killingsworth was prepared to testify, based on a review of a schematic of the coupling and the physical characteristics of the coupling, that the female side of the coupling might have failed either because the coupling was exposed to pressure in excess of its rated pressure,[6] or because there was a defect in the manufacturing of the female side of the coupling. Killingsworth never actually examined the female side of the coupling alleged to have failed; it was never recovered.[7] Because he did not examine the actual coupling, plaintiff's expert could not rule out corrosion, normal wear and tear, abuse, or a number of other possibilities as the cause of the inferred failure.

Upon the objection of defense counsel, the trial court excluded the testimony of the expert on the grounds that it was speculative and of no assistance to the trier of fact. Brown then rested. Parker–Hannifin requested a directed verdict, arguing that Brown had failed to present evidence

---

4. The testimony of other witnesses suggested that Brown failed to release the pressure on the system, that he used a lightweight nipple and bushing, or that he may have accidentally hit the nipple with the sledge hammer instead of hitting the union.

5. See Richardson v. Richardson–Merrell, Inc., 857 F.2d 823, 829 (D.C.Cir.1988), cert. denied, —— U.S. ——, 110 S.Ct. 218, 107 L.Ed.2d 171 (1989); Pool v. Missouri P. R.R., 541 So.2d 969, 973–74 (La.Ct.App.1989).

6. Page, the manager of Pageco Tools, ordered couplings from Port Hardware, asking for couplings that could withstand pressures up to 10,-000 psi. Port Hardware delivered to Pageco Tools the Parker–Hannifin Pioneer 4000 series coupling, pressure rated to only 2500 psi. It was this coupling that was allegedly in use on

the date of the accident. Parker–Hannifin did not label its couplings with a pressure rating, but instead stamped the coupling with its model number. Parker–Hannifin provided catalogs to its distributors that contained the pressure ratings of the couplings by model number. Brown argues that this method of distributing the pressure ratings of its couplings is both a negligent act and a defect in the couplings because not everyone who might use the couplings would have a catalog available, while everyone could read the pressure rating if stamped on the coupling. Because of our resolution of the causation issue, we do not address whether the use of a catalog system to distribute pressure ratings of couplings and other fittings is a negligent act or renders a coupling unreasonably dangerous.

7. Apparently, it was thrown away after Brown replaced it.

sufficient to enable a reasonable jury to find that either a defect or Parker–Hannifin's negligence was a cause in fact of the accident. The trial judge granted the motion.

Brown appeals the exclusion of his expert's testimony and the directed verdict.

## II

To avoid a directed verdict,[8] Brown must establish sufficient evidence to enable a reasonable jury to find that either a defect[9] in the coupling, or Parker–Hannifin's negligence in not inscribing the coupling with its pressure rating, caused his injury, *i.e.* that but-for[10] the defect or the negligence the accident would not have occurred.[11] Accepting as true that a failure in the coupling led to the trapping of pressure, Brown still must show that, more likely than not, a defect in the coupling, or the negligence of Parker–Hannifin in failing to label the coupling with its pressure rating, caused the failure. In determining whether Brown has presented sufficient evidence to enable a reasonable jury to find that a defect in the coupling or Parker–Hannifin's negligence caused his injury, we begin with the exclusion of Killingsworth's testimony.

### A. *Exclusion of Killingsworth's Testimony*

■■■ Under Rule 702, a trial judge may permit an expert to testify if the testimony would "assist the trier of fact to understand the evidence or to determine a fact in issue."[12] A district court may properly exclude the testimony of an expert if that testimony lacks an adequate foundation[13] or is not based on data "reasonably relied upon by experts in the particular field."[14] A trial court's decision to exclude expert testimony may be reversed only for manifest error that substantially prejudiced the plaintiff's case.[15]

■ Counsel for Brown paid Killingsworth to theorize concerning potential causes of the failure that would support a finding of liability against Parker–Hannifin. In his deposition, Killingsworth testified that exposing the coupling to pressures exceeding the rated pressure of the coupling might have caused the failure, or that, if the female side of the coupling had been improperly constructed, then such defect in construction might have caused the failure.

Killingsworth was willing to testify to these two possible causes despite the fact that he had never seen the coupling in question, did not know how long the particular coupling had been in service,[16] and did

8. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250–52, 106 S.Ct. at 2511–12; *Boeing v. Shipman,* 411 F.2d at 374–75 (en banc).

9. Both Louisiana decisional law and the Louisiana Products Liability Act recognize that a manufacturing defect or a failure to warn may render a product unreasonably dangerous. *See Halphen v. Johns–Manville Corp.,* 484 So.2d 110, 114–15 (La.1986); La.Rev.Stat.Ann. §§ 9:2800.-55, 9:2800.57 (West Supp.1990). While there are differences between the two, *see, e.g., Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 180–81 (5th Cir.1990), both require the plaintiff to show that the unreasonably dangerous aspect of the product caused the injury. *See Halphen,* 484 So.2d at 113; La.Rev.Stat.Ann. § 9:2800.54(A) (West Supp.1990). Because the plaintiff failed to establish causation, he can recover under neither, and we need not address which rules would apply to determine whether the plaintiff established that the product was unreasonably dangerous.

10. Where an injury is caused by two sufficient acts of negligence (or defects), causation in fact can be shown by establishing that a given act (or defect) was a substantial factor in the injury. *See LeJeune v. Allstate Ins. Co.,* 365 So.2d 471, 477 (La.1978); *Trahan v. State, Dept. of Transp. & Dev.,* 536 So.2d 1269, 1272 (La.Ct.App.1988).

11. *See Halphen v. Johns–Manville Sales Corp.,* 484 So.2d at 113 (strict liability actions); *Sinitiere v. Lavergne,* 391 So.2d 821, 825–26 (La.1980) (negligence actions); *see also* La.Rev.Stat.Ann. § 9:2800.54(A) (West Supp.1990).

12. Fed.R.Evid. 702 (West 1984).

13. *See, e.g., Viterbo v. Dow Chemical Co.,* 826 F.2d at 422; *see also* Fed.R.Evid. 703 (West 1984).

14. Fed.R.Evid. 703 (West 1984).

15. *See Viterbo,* 826 F.2d at 422.

16. Testimony at trial established that these couplings had been used since 1979. Apparently,

not know under what conditions this particular coupling had been stored or used. He did not test his theories to determine whether the alleged overpressurization on the date of the accident was sufficient to cause the failure that he theorized was possible. He did not examine the defendant's manufacturing process to determine whether, and how often, manufacturing defects occur. Nor did he otherwise determine which of the many possible causes of the failure was most probable. Essentially, he developed two theories consistent with the facts, as testified to by the plaintiff.

While either of these two theories are possibilities, other theories explain the failure equally well. As Killingsworth admitted in his deposition, corrosion, abuse, or normal wear and tear could have caused the failure. Without some basis to establish that one of his theories is the most likely cause of the failure on this occasion, his testimony amounts to speculation and is of no assistance to the jury. The trial court properly excluded the testimony.[17]

### B. *Evidence Establishing Causation*

██ To establish causation, Brown need not rule out every conceivable explanation for the failure, but he must present sufficient evidence to enable a jury to find that either a defect in the product or the defendant's negligence was the most probable cause of the failure of the coupling. If he fails to introduce sufficient evidence to enable a jury to find that either a defect in the product or defendant's negligence most probably caused the accident, then the trial court should enter a directed verdict in favor of the defendant.[18]

If we accept Brown's testimony, we can infer that the ball and spring mechanism in the female side of the coupling failed on the day of the accident. The ball in the

female side did not push against the ball in the male side, permitting the ball in the male side to seat and trap the pressure that eventually injured the plaintiff. But why did it fail? We may hypothesize any number of reasons: exposing the coupling to pressure exceeding its rated pressure may have expanded the body of the female side sufficiently to permit the ball or spring to become misaligned; perhaps this ball and spring mechanism was defectively manufactured to begin with; perhaps this spring simply wore out, just like the springs on our cars wear out after thirty thousand miles; perhaps sand grains or cement particles picked up by the water while in a piece of not-quite-clean equipment cut the spring as they rushed past. The list of possibilities is almost endless. And while our common sense tells us that some are more likely than others, nothing in the record establishes either a defect or overpressurization as the most likely cause. Therefore, the district court correctly ordered a directed verdict. We affirm the decision of the trial court.

### III

Because Brown failed to present sufficient evidence to establish that either a defect in the coupling or Parker–Hannifin's negligence in failing to label the coupling with its pressure rating was the most probable cause of the failure, we AFFIRM the trial court's directed verdict.

---

Pageco would order a number at a time to be stored together in a bin in Pageco's shop. From the evidence, it cannot be determined whether this particular valve had been in use one day or seven years at the time of the failure.

**17.** *See Edmonds v. Illinois C.G.R.R.,* 910 F.2d 1284, 1287 (5th Cir.1990); *Washington v. Arm-*

*strong World Indus.,* 839 F.2d 1121, 1123–24 (5th Cir.1988) (per curiam); *Viterbo v. Dow Chemical Co.,* 826 F.2d at 422 (5th Cir.1987).

**18.** *See Richardson v. Richardson–Merrell, Inc.,* 857 F.2d at 829; *Pool v. Missouri P. R.R.,* 541 So.2d at 973–74.