626 So.2d 874 (1993)
STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., et al., Plaintiffs-Appellees,
v.
WRAP-ON COMPANY, INC., Defendant-Appellant.
No. 93-89.
Court of Appeal of Louisiana, Third Circuit.
November 3, 1993.
Writ Denied January 28, 1994.
*875 Alex Andrew Lopresto III, Thomas Pennington Greene, Lafayette, for State Farm Mut. Auto. Ins. Co.
Gregory Kent Moroux, Samuel Robert Aucoin, Lafayette, for Wrap-On Co., Inc.
Before YELVERTON, KNOLL and THIBODEAUX, JJ.
THIBODEAUX, Judge.
Wrap-On Company, Inc. appeals a judgment in favor of plaintiffs, State Farm Mutual Automobile Insurance Company, State Farm Fire & Casualty Company and James R. York, in this products liability suit. The trial judge found the heat tape manufactured by Wrap-On unreasonably dangerous and awarded $13,681.18 in damages. For the following reasons, we affirm.

ISSUES
Wrap-On raises the following issues:
(1) Whether sufficient evidence was presented to prove the heat tape was unreasonably dangerous.
(2) Whether a document based on uninvestigated reports compiled by a government agency is admissible under the exceptions to the hearsay evidence rules.

FACTS
On December 26, 1989, a travel trailer and its contents, owned by James York, were destroyed by fire. At that time, York and his wife were spending the Christmas holidays in Alabama, so there were no injuries. The cause of the fire is the subject of this suit.
In 1986 or 1987, York purchased a product known as "heat tape" which was manufactured by Wrap-On. Heat tape resembles an extension cord. The heat tape involved in this incident is long, flat, approximately three-quarters to an inch wide and has a two-prong electrical plug at one end. It is used to prevent exposed water pipes from freezing. The heat tape is wrapped around the exposed pipe and plugged into an electrical outlet. It emits a mild heat that warms the pipe just enough to prevent the water within from freezing. Plaintiffs assert the heat tape purchased by York was defective and responsible for the fire.
York filed a claim with State Farm Automobile for the damage to the trailer and with State Farm Fire for the damage to its contents. The insurers paid him a total of $13,681.18 and, by virtue of conventional subrogation, brought this suit to recover that amount from Wrap-On. York joined in the suit to recover the amount he paid in deductibles. The basis of plaintiffs' claim is that the heat tape is unreasonably dangerous as defined by the Louisiana Products Liability Act.
*876 Trial was held on July 22, 1992. Plaintiffs presented York and Dan Snow, Jr. as witnesses. Snow was presented as an expert in causation and origins of fires. Defendants presented John Gust, an employee of Wrap-On, as its sole witness. The trial judge took the matter under advisement and shortly thereafter issued judgment for plaintiffs. Wrap-On appealed.

LAW & ANALYSIS

Issue One
Wrap-On asserts that plaintiffs failed to prove their claim under the Louisiana Products Liability Act. The Act is the exclusive means to recover for damages caused by a defect in a manufacturer's product. LSA-R.S. 9:2800.51. A claimant may recover under the Act by proving that the damage arose from a reasonably anticipated use of the product and that the product is unreasonably dangerous in at least one of the following ways: (1) in construction or composition; (2) in design; (3) for inadequate warning; or, (4) for the product's failure to conform to an express warranty of the manufacturer. LSA-R.S. 9:2800.54.
Wrap-On contends that the plaintiffs only proved, if anything, that the heat tape was the most probable cause of the fire. It argues that without substantive proof of a theory set forth in the Act, the fact that the heat tape was the only possible source of the fire is insignificant. It claims the trial judge did not rule in plaintiffs' favor based on proof of a claim under the Act, but relied improperly on evidence that the heat tape was the most likely cause of the fire. To support its argument, Wrap-On points to the trial judge's reasons which it contends contain no clearly articulated theory of recovery under the Act.
In products liability cases, the trial court is required to "articulate the theory or the evidentiary facts upon which its conclusion is based." Bloxom v. Bloxom, 512 So.2d 839, 843 (La.1987). However, the reasons are not required to be of the ideal clarity; rather, they must be discernible either directly or by implication. If the reasons and theory are clear, the trial judge is entitled to great discretion. If clarity is so lacking as to obscure the logic in judgment, the appellate court must undertake a review of the entire record to determine if the judgment is warranted. Bloxom, supra.
In this case, the trial judge's reasons reveal he was greatly influenced by the abundance of evidence indicating the heat tape caused the fire. He appeared to find liability based on an application of the principle of res ipsa loquitur to the facts. Res ipsa loquitur is not a theory of recovery, but its apparent use in this case raises the questions of whether it may be utilized to prove a claim under the Louisiana Products Liability Act, and whether it was used to prove the current one.
The principle of res ipsa loquitur is circumstantial evidence, not substantive law. Cangelosi v. Our Lady of the Lake Regional Medical Center, 564 So.2d 654 (La.1989); Boudreaux v. American Insurance Company, 262 La. 721, 264 So.2d 621 (1972). Circumstantial evidence is evidence of fact or facts from which the fact sought to be proven may be inferred. Cangelosi, supra; W. Prosser & W. Keeton, The Law of Torts, § 39, at 242 (5th ed. 1984).
The court in Larkin v. State Farm Mutual Automobile Insurance Co., 233 La. 544, 97 So.2d 389, 391 (1957) made the following analysis:
"All that is meant by res ipsa loquitur is `that the circumstances involved in or connected with an accident are of such an unusual character as to justify, in the absence of other evidence bearing on the subject, the inference that the accident was due to the negligence of the one having control of the thing which caused the injury. This inference is not drawn merely because the thing speaks for itself, but because all of the circumstances surrounding the accident are of such a character that, unless an explanation can be given, the only fair and reasonable conclusion is *877 that the accident was due to some omission of the defendant's duty.'" (Footnote omitted).
The jurisprudence has relaxed the requirement that the thing which caused the injury be in the exclusive control of the defendant. Lucas v. St. Frances Cabrini Hospital, 562 So.2d 999 (La.App.3d Cir.), writ denied, 567 So.2d 101, 567 So.2d 103 (La.1990); Cangelosi, supra.
Heretofore, res ipsa loquitur has been used predominantly in negligence cases. An argument may be made that, as the Act is not based wholly on negligence theory, the doctrine has no application to claims brought under it. On the contrary, we believe that because it is an evidentiary doctrine, it may be applied to any theory of recovery for which it is suitable. The Act does not distinguish what is acceptable evidence; it only requires that certain elements of certain theories be proved. Moreover, because application of the doctrine only gives rise to a permissible inference of liability, it does not mandate that liability be found. Larkin, supra.
In fact, the Louisiana Supreme Court has previously applied res ipsa loquitur in a products liability case. In Weber v. Fidelity & Casualty Insurance Company of New York, 259 La. 599, 250 So.2d 754 (1971), plaintiff alleged that a brand of cattle dip was defective and caused the death of his cattle. He sued the manufacturer of the dip. The trial court found the dip was defective because it contained too much arsenic. The court of appeal reversed, but the supreme court reinstated the trial court's judgment and held that plaintiff proved his claim solely by showing that the dip was the most probable cause of the damages.
While the court in Weber never specifically stated that it was utilizing res ipsa loquitur, it applied the doctrine in effect. It stated that plaintiff's burden of proof by a preponderance of the evidence, may be met by either direct or circumstantial evidence and that, if circumstantial evidence is used, it must exclude other reasonable hypotheses with a fair amount of certainty. It is not necessary to negate all possible causes. This application-in-fact of res ipsa loquitur to a products liability case indicates that the doctrine is not limited to negligence cases nor does it require the use of its Latin titlelike some talismanic incantationto be effective.
In the recent case of Guidry v. Louisville Tin & Stove Co., Inc., 613 So.2d 1114 (La. App. 5th Cir.1993), the manufacturer of a gas-operated floor furnace was held liable for a fire caused by a defect in the furnace's valve mechanism, despite the fact that no expert could identify the defect. The trial judge relied on evidence from plaintiff's expert that the mechanism was the only possible source of the fire. The appellate court held that the proof was sufficient to sustain the claim. Although, as in Weber, the court did not state that res ipsa loquitur was applied, it was used in fact to infer that a defect existed in the valve mechanism and that defect caused the fire.
Having found that res ipsa loquitur applies to products liability cases, we turn to whether its application here carries plaintiffs' burden of proof.
Much of the evidence produced by plaintiffs was uncontested. Wrap-On is admittedly the manufacturer of the heat tape involved in this suit. York testified that he installed the heat tape according to the directions supplied with it. This was uncontradicted and there was no evidence presented that he installed it incorrectly or modified it in a way that would lead to malfunction.
York testified he was so concerned about electrical fires that he unplugged every electrical appliance in the trailer whenever he was to be away for awhile. He did this before he left for Alabama but, because the weather forecast predicted a severe freeze, he found it necessary to plug in the heat tape. This testimony is uncontradicted.
Snow was plaintiffs' expert witness in the causes and origins of fires. He examined the scene after the fire had been extinguished and concluded that the only possible source *878 of the fire was the heat tape. It was his opinion that the heat tape malfunctioned and caught fire. He believed the fire burned along the pipe to where it went beneath the trailer and then ignited the trailer and its contents.
Snow emphasized that the pipe around which the heat tape was wrapped had spiral burn patterns indicating the heat tape had ignited completely. He located the source of the fire at the point where the heat tape went beneath the trailer, approximately six inches from where the pipe entered the trailer wall. He concluded that there were no other possible sources of ignition at the point where the fire originated. Natural gas was ruled out because the trailer was not hooked to any supply. Faulty electrical wiring was omitted because no wires ran near the fire's origin.
Snow's testimony was also largely uncontradicted. Wrap-On offered no opposing expert in the same field. Gust, who was accepted by the trial judge as essentially an expert in his company's products, did not examine the scene of the incident. In fact, he testified that the amount of money demanded in this dispute did not warrant the expense of sending someone to examine the fire scene or the heat tape. His first examination of the heat tape was during the trial, after which he concluded that it had not malfunctioned.
Gust further testified that the heat tape purchased by York was the company's least expensive model and was not Underwriter's Laboratory approved. (Underwriter's Laboratory is a private organization which sets safety standards, then tests consumer-available electrical products to determine if they meet the standards). Gust stated that at the time the heat tape in question was purchased, Wrap-On offered models that were not U.L. approved and other, more expensive ones, which were. He added that all of the heat tapes it now offers are U.L. approved. He agreed that the U.L. approved heat tapes were safer than those of the same model as the one York purchased.
Gust disagreed with Snow in his assessment of whether the polyvinylcholoride insulation which surrounds the electrical wires in the heat tape would ignite if an electrical short occurred. He stated that the insulation might melt but it would not combust without some external source of heat. This directly contradicts Snow who stated that the insulation would burn sufficiently to create the fire that burned the trailer without an external source of heat.
There was a scarcity of technical evidence in this case, although we recognize that the heat tape is not an extremely technical mechanism. The essence of the evidence is that the heat tape was installed properly, it was the only heat source near where the fire originated, it ignited while in use and the resulting fire destroyed the trailer. We think this evidence is sufficient to give rise to an inference of a defect under the Act.
Obviously, the situation from which the damage arose was a reasonably anticipated use of the heat tape. It was being used exactly in a manner for which it was designed. The evidence raises the inference that the heat tape was defective when it left the manufacturer, as it was shown that it was properly installed and not modified in any way.
Furthermore, it can be inferred that the heat tape was unreasonably dangerous in construction or composition. LSA-R.S. 9:2800.55 states:
A product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer.
As all other sources of fire were ruled out, it is no broad assumption to think that the heat tape was the source of the fire. Nor is a dramatic leap of faith required to believe that a malfunction in the heat tape caused it to ignite, as no other possible reason for its *879 ignition was offered. No doubt the malfunction and ignition of the heat tape is not in accord with the "manufacturer's specifications or performance standards for the product." LSA-R.S. 9:2800.55. Thus, we conclude that plaintiffs successfully utilized the doctrine of res ipsa loquitur to prove that the heat tape was unreasonably dangerous in construction or composition and that this defect caused its damages.

Issue Two
Wrap-On raises the second issue because the trial judge allowed plaintiffs to introduce a document into evidence from the United States Consumer Product Safety Commission. This document set out information on 358 heat tape fires from 1987 to 1992. Wrap-On argues that the information is not a public record or report contemplated by the hearsay exception of LSA-C.E. art. 803(8).[1] It insists the report is a "catalogue of uninvestigated complaints."
The source of many of the report's complaints is newspaper articles. Wrap-On argues that these articles are highly inaccurate and of no evidentiary worth. The trial judge agreed in part but pointed out that 153 of the reported heat tape fire incidents had been investigated. In allowing the report into evidence, he stated that it mostly would go to the weight and not the substance of the evidence. Furthermore, he assured Wrap-On that the report's uninvestigated claims would be ignored.
LSA-C.E. art. 803(8)(a)(ii) allows into evidence reports of observations from agencies under a legal duty to provide information to the public. The Consumer Products Safety Commission plainly exists to provide the consumer with information regarding potentially unsafe products. The report contained some uninvestigated incidents but the trial judge made clear his awareness of that fact and his intention to ignore unsubstantiated reports. We find no error in the admission of this report.

CONCLUSION
For the foregoing reasons, the judgment in favor of State Farm Mutual Automobile Insurance Company, State Farm Fire & Casualty Company and James R. York, and against Wrap-On Company, Inc., is affirmed. Wrap-On is ordered to pay all costs of this appeal.
AFFIRMED.
NOTES
[1] LSA-C.E. art. 803(8) states:

Art. 803. Hearsay exceptions; availability of declarant immaterial
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
* * * * * *
(8) Public records and reports. (a) Records, reports, statements, or data compilations, in any form, of a public office or agency setting forth:
(i) Its regularly conducted and regularly recorded activities;
(ii) Matters observed pursuant to duty imposed by law and as to which there was a duty to report; or
(iii) Factual findings resulting from an investigation made pursuant to authority granted by law. Factual findings are conclusions of fact reached by a governmental agency and may be based upon information furnished to it by persons other than agents and employees of that agency.
(b) Except as specifically provided otherwise by legislation, the following are excluded from this exception to the hearsay rule:
(i) Investigative reports by police and other law enforcement personnel.
(ii) Investigative reports prepared by or for any government, public office, or public agency when offered by that or any other government, public office, or public agency in a case in which it is a party.
(iii) Factual findings offered by the prosecution in a criminal case.
(iv) Factual findings resulting from investigation of a particular complaint, case, or incident, including an investigation into the facts and circumstances on which the present proceeding is based or an investigation into a similar occurrence or occurrences.