**Charles and Carol WILLIAMS**

v.

**EMERSON ELECTRIC CO., et al.**

Civ. A. No. 94–1226.

United States District Court,
M.D. Louisiana.

Nov. 20, 1995.

John Paul Massicot, Silvestri & Massicot, New Orleans, LA, for plaintiff.

Wayne K. McNeil, Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, New Orleans, LA, for defendants.

## ORDER AND REASONS

FELDMAN, District Judge.

Before the Court is a motion by defendant Louisville Ladder Corp. for summary judgment. For the reasons that follow, the motion is DENIED.

### Background

In March, 1994, Charles Williams bought a six-foot Louisville model 1506 stepladder. Its duty rating was listed as 1A, capable of sustaining 300 pounds. Mr. Williams weighed approximately 275 pounds; he was fifty-two years old, and had owned his own electrical contracting firm for fourteen years. He often uses ladders in his work.

A few days later, Mr. Williams set the ladder on the floor of his garage so that he could look for a box in the attic above his carport. Mr. Williams' wife, Carol, also a plaintiff here, and Mr. Williams' son and daughter-in-law were present in the garage and watched while Mr. Williams mounted the ladder to its third step and reached into the attic. He grasped the box and turned his head to tell his family that he had found it. At that moment, he fell from the ladder onto the concrete floor of the garage. Mr. Williams fractured his hip and thigh in seven places. Photographs taken after the accident show that the aluminum in the bottom-most rear ladder brace had crumpled.

Mr. Williams and his wife sued Louisville Ladder under the Louisiana Products Liability Act (LPLA), LA.REV.STAT. 9:2800.51 et seq.

The plaintiffs claim damages under theories of negligence and strict liability; they seek the evidentiary shelter of res ipsa loquitur. Louisville Ladder Corporation moves for summary judgment on all of the plaintiffs' claims.

### Law And Application

#### I.

Federal Rule of Civil Procedure 56 teaches that summary judgment is appropriate if the record discloses that no genuine issue as to any material fact exists, and that the movant is entitled to judgment as a matter of law. A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment is proper if the opponent fails to establish an essential element of any claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Yet, the Fifth Circuit cautions us that we must "view the evidence and the inferences to be drawn from it, in the light most favorable to the nonmovant." Pavone v. Mississippi Riverboat Amusement, Ltd., 52 F.3d 560 (5 Cir. 1995).

#### II.

The plaintiffs advance three separate theories of liability under the Louisiana Products Liability Act: defective design; defective construction or composition; and breach of express warranty. Louisville Ladder asserts that the plaintiffs have failed to meet their burden under any of these theories. The defendant contends that the report submitted by the plaintiffs' ladder expert, Robert Lipp, shows no evidence of a defect in design, construction, or composition. According to the defendant, the plaintiffs' case must fail without expert identification of a specific defect that most probably caused the accident. Further, Louisville Ladder urges that the Williamses may not assert a claim for breach of warranty, because their complaint does

not contain this theory.[1]

### A.

■ The LPLA sets forth exclusive elements of proof in a products liability suit against a manufacturer. A plaintiff must show that "a characteristic of the product" rendered it "unreasonably dangerous," and that this characteristic caused the plaintiff's injury. A product qualifies as unreasonably dangerous only if it is so because of (1) construction or composition; (2) design; (3) inadequate warning; or (4) breach of an express warranty. LA.REV.STAT. 9:2800.54(B).

The dispute here centers on whether, to survive summary judgment, one who invokes the LPLA must identify the specific defect that most likely caused the accident. Louisville Ladder claims that he must. The Williamses contend that they need only show that some defect likely existed, and that they may establish this likelihood by circumstantial evidence.

Each side has some legal grounding.[2] The Fifth Circuit's decision in *Brown v. Parker–Hannifin Corp.*, 919 F.2d 308 (5 Cir.1990), appears to support the defendant's position. The *Brown* plaintiff sued the manufacturer of a quick-release coupling, contending that his injuries resulted from either a manufacturing defect or inadequate labeling. *Id.* at 309. As is requested here by Louisville Ladder, the trial court in *Brown* excluded all testimony of the plaintiff's expert, on grounds that the expert had never examined the actual coupling, which was lost during the accident; thus, the court reasoned, the expert's opinions and theories of defective design were wholly speculative. *Id.* at 310. The Fifth Circuit agreed:

> If we accept Brown's testimony, we can infer that the ... mechanism in the ...

coupling failed on the day of the accident.... But why did it fail? We may hypothesize any number of reasons.... The list of possibilities is almost endless. And while our common sense tells us that some are more likely than others, nothing in the record establishes either a defect or overpressurization as the most likely cause. Therefore, the district court correctly ordered the directed verdict.

*Id.* at 312.

Although we at least have a photo of the buckled portion of the ladder, the defendant characterizes this case as analogous to *Brown*. Mr. Lipp, the plaintiffs' expert, admits that he did not examine the ladder before the accident; his theories of causation rest entirely on his examination of exemplars of the same and different models, and what he gleans from the photo. His report, however, identifies no specific manufacturing, composition, or construction defect. Under *Brown*, it is argued, the mere fact of a product's failure does not impose liability on the manufacturer. Thus, the plaintiffs' case must fail.

The plaintiffs, in turn, rely upon the recent state court decision in *State Farm Mutual Auto. Ins. Co. v. Wrap–On Co.*, 626 So.2d 874 (La.Ct.App.3d 1993). *Wrap–On* concerned the failure of heat-tape. Anticipating low temperatures, the plaintiff wrapped the heat-tape around his water pipe, and plugged it in, to prevent the pipes from freezing while he was away on vacation. *Id.* at 877. He disconnected every other appliance in his trailer, for fear of causing an electrical fire. Nevertheless, the trailer burned to the ground. Plaintiff's insurance company, State Farm, sued the heat-tape manufacturer under the LPLA, theorizing that the heat-tape

---

**1.** The Court finds no merit in this challenge. Louisville Ladder urges that the lawsuit does not make a claim by the plaintiffs for breach of express warranty under LA.REV.STAT. 9:2800.58. The plaintiffs, in turn, contend that their complaint encompasses a theory that the ladder did not live up to its "1A" duty rating. The language of (b) and (d), Paragraph XIV, of the Williamses' petition explicitly refers to improper, inadequate, incorrect, or incomplete rating of the ladder. That the plaintiffs did not cite the relevant section of the statute does not preclude their claim

for breach of express warranty. *See* FED.R.CIV.P. 8(f) ("All pleadings shall be so construed as to do substantial justice.").

**2.** The Louisiana Supreme Court has not spoken on this issue. However, the Court notes that the text of the statute, Section 2800.54(A), makes the manufacturer liable for "a characteristic of the product," not "a specific characteristic of the product," that makes the product unreasonably dangerous.

had ignited. *Id.* at 877–78. In a bench trial, the judge gave judgment against the manufacturer. *Id.* at 876.

The state Court of Appeals affirmed, finding that

> [t]he evidence raises the inference that the heat tape was defective when it left the manufacturer, as it was shown that it was properly installed and not modified in any way.... As all other sources of fire were ruled out, it is no broad assumption to think that the heat tape was the source of the fire. Nor is a dramatic leap of faith required to believe that a malfunction in the heat tape caused it to ignite, as no other possible reason for its ignition was offered.

*Id.* at 878–79. *Wrap–On* expressly approved the plaintiff's use of *res ipsa loquitur* as an evidentiary doctrine which "gives rise to a permissible inference of liability," but "does not mandate that liability be found." *Id.* at 877.

The Williamses urge the similarities between their case and *Wrap–On.* It is uncontested that Mr. Williams bought the ladder only four days prior to his accident; he used it only once before. Further, taken in the light most favorable to the plaintiffs, the evidence implies that Mr. Williams—an experienced ladder-user—followed all instructions and did not misuse the ladder. But, although it carried a load rating of 300 pounds, the ladder failed under Mr. Williams' 275–pound weight. These facts, according to the plaintiffs, raise a permissible inference that

the ladder was defective, and that the defect existed at the time of its production. Thus, the plaintiffs claim, the law does not require expert testimony to identify a specific defect.

■ The Court finds *Wrap–On* persuasive and *Brown* distinguishable. As noted by the plaintiffs, the modern-day *res ipsa loquitur* doctrine in Louisiana more directly implicates the weight accorded to circumstantial evidence. Where "the circumstances involved in ... an accident are of such an unusual character" as to justify an inference of liability, *Wrap–On,* 626 So.2d at 876 (quoting *Larkin v. State Farm Mutual Auto Ins. Co.,* 233 La. 544, 97 So.2d 389, 391 (1957)), the plaintiff may, at the close of the evidence, rely on the doctrine to prove an essential element of his case. The doctrine does not create a cause of action; its purpose is evidentiary. Its application, as an evidentiary device, is not limited to negligence cases in Louisiana. As the *Wrap–On* court observed, the LPLA sets forth the substantive law; it says nothing about how a plaintiff must prove his case. *Id.* at 877. Under *res ipsa loquitur,* the circumstantial evidence presented "must exclude other reasonable hypotheses with a fair amount of certainty. It is not necessary to negate all possible causes." *Id.*[3] Moreover, the extent of surmise and speculation that offended the *Brown* court is not present here. Here, we have the graphic photo; in *Brown,* the coupling had been lost after the accident. In *Brown,* the coupling was not new. The lad-

---

**3.** The Court further notes that, as interpreted by the Louisiana courts, the "exclusive control" often cited as an element of the doctrine has been significantly relaxed. *Spott v. Otis Elevator Co.,* 601 So.2d 1355, 1362 (La.1992). The purpose of requiring that the item lie within the defendant's control is two-fold: first, it is a way of showing that the defendant probably possessed much more information than others about the *res* (and thus much more information about the causes of the accident); second, it may "simply help[ ] to establish a duty" on the part of the defendant. *Lucas v. St. Frances Cabrini Hosp.,* 562 So.2d 999, 1005 (La.Ct.App.3d 1990) (citing *Cangelosi v. Our Lady of the Lake Reg. Med. Ctr.,* 564 So.2d 654, 666 (La.1991) (on rehearing)).

The state's highest court has recognized that these purposes do not require such a rigid rule. The "exclusive control" requirement, as interpreted by the Louisiana Supreme Court, "is satis-

fied if the circumstances indicate that it is more probable than not that the defendant caused the accident and other plausible explanations do not appear to be the probable cause of the accident." *Spott,* 601 So.2d at 1362.

Neither party here seriously contends that the hardware store where Mr. Williams bought the ladder has any relevant information about its soundness. Further, of the ladder's design, construction, and composition, Mr. Williams knew little at the time of his purchase. As such, contrary to the defendant's contentions, that Mr. Williams controlled the ladder for four days does not deprive him of the right to rely on *res ipsa.* Compare *Smith v. Xerox Corp.,* 866 F.2d 135, 140 (5 Cir.1989) (affirming that plaintiff may not invoke doctrine where all parties who might have caused the injury were not parties to the case); *Brown,* 919 F.2d at 312 (noting that coupling may have failed from extended use).

der here was. *Brown* is not factually compelling.

### B.

Permitting use of the doctrine here appeals to common sense. In the uncontradicted testimony of eyewitnesses (although admittedly they are members of the plaintiffs, family), this new ladder, mounted by an experienced user, failed under normal conditions during only its second use. Of course, probing cross-examination could change all that. But the Court believes that these facts have the "unusual character" necessary for invocation of *res ipsa loquitur* under current Louisiana doctrine. *Compare Brown*, 919 F.2d at 312 (noting that the failed and unavailable coupling had been in use for some time, and may well have corroded or worn out); *Clement v. Griffin*, 634 So.2d 412 (La. Ct.App. 4th 1994) (finding the tire blowout not unusual enough to infer defect through fact of accident).

The Williamses invoke the doctrine here to meet their evidentiary burden on causation. It is undisputed that the ladder's lower rear brace showed buckling after the accident, where it had not before. The plaintiff asserts that, assuming normal use, such buckling does not occur in the absence of some manufacturing defect or improper rating. The defendant's expert, Mr. Schmitt, apparently agrees.

The plaintiffs advance several possible defects that might have caused the accident: an improper duty rating,[4] a rear brace weakened by its binding to the lowest step,[5] and unintentional "walking."[6] The plaintiffs candidly admit that they do not know which, if any, of these scenarios caused the ladder to buckle. But buckle it did, they urge. Although the defendant notes repeatedly that Mr. Lipp's opinions are not based on his examination of the accident-ladder, the Court finds that this fact carries less weight than the defendant imagines. Again, the Court draws attention to the photo. Mr. Lipp obviously could not test the ladder before Mr. Williams' accident. After the accident, the damage to the ladder had already occurred; it would seem difficult, if not impossible, to separate out those defects that existed before the accident from those that resulted from the accident. In this situation, the plaintiffs must be able to pursue theories supported by lay testimony, as well as that offered by experts. Defendants can counter with probing cross-examination, evidence of comparative or sole fault, and direct testimony.

The Court finds that "reasonable minds could reach different conclusions" regarding what precise defect most probably caused Mr. Williams' accident. *See Cangelosi*, 564 So.2d at 666. Although other causes—such as Mr. Williams' misuse of the ladder—may also be possible, they are not so legion or so technical, as in *Brown*, that they render the plaintiffs' theories unacceptably speculative. *Compare Brown*, 919 F.2d at 312 (finding that "[t]he list of possibilities is almost endless."). If Mr. Williams used the ladder properly, the failure resulted from a manufacturing defect or a breach of warranty. The Williamses have produced sufficient evidence to meet their burden. The Court finds that a genuine issue of material fact remains regarding causation. The plaintiffs are entitled to bring their claims before a jury.

Accordingly, Louisville Ladder's motion for summary judgment is DENIED.

---

4. The plaintiffs note that other ladders using the U-shaped brace on the model 1506 were rated to carry only 225 pound loads, rather than the 300 pound loads that the 1A rating indicates.

5. The rear brace, the one that shows buckling here, is often tied to the lowest step before leaving the manufacturer. The defendant's expert, Mr. Schmitt, admitted that this binding—if too tight—can weaken the brace and, sometimes, cause imperceptible misalignment. He also agreed that this condition could cause an accident such as the one suffered by Mr. Williams.

6. This last theory is the one espoused by the plaintiffs' expert, Mr. Lipp. Apparently, Mr. Lipp and the defendant's expert disagree on the viability of this theory: although the defendant's expert contends that ladders may only be "walked" through the intentional acts of their users, Mr. Lipp believes that ladders can walk against the wishes of their users. Whether expert testimony on such an every-day occurrence is needed will have to await a ruling by the Court. *See Peters v. Five Star Marine Serv.*, 898 F.2d 448, 449–50 (5 Cir.1990).