# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 24, 2012

No. 11-30077
Summary Calendar

Lyle W. Cayce
Clerk

BUD JOHN CHAPMAN,

Plaintiff–Appellant,

v.

ENSCO OFFSHORE COMPANY,

Defendant–Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana
No. 2:09-CV-6099

Before DENNIS, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:[*]

Appellant Bud Chapman (Chapman) appeals from a jury verdict against him in his suit against ENSCO Offshore Company (ENSCO). Chapman asserts two points of error on appeal. First, he argues that the district court erred in excluding a document produced as a result of ENSCO's investigation into his accident. Second, he challenges the jury's verdict. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-30077

I

Chapman worked for ENSCO for approximately five years as an electrician on board the ENSCO 74, an oil rig. He was transferred to the ENSCO 7500, a much larger oil rig, also owned by ENSCO. When he arrived on the ENSCO 7500, the acting electrical supervisor, Artemus Skipper, assigned him to work with Justin Maxwell, another electrician that Chapman had trained aboard the ENSCO 74.

After arriving on the ENSCO 7500, Chapman noticed that a set of gauges had been left on an HVAC unit. At a brief meeting between Chapman, Maxwell, and Skipper, Chapman informed Skipper that the gauges had been left on the unit. Skipper instructed them to find out why the gauges had been left there. They were unable to do so, and no one has since discovered who left the gauges on the unit or why they were left. On Chapman's third day of work aboard the ENSCO 7500, there was another brief meeting between Chapman, Maxwell, and Skipper. Chapman again indicated that the gauges were still on the HVAC unit. Skipper then said that if there was time that night, then the gauges could be removed. The parties dispute whether Skipper was talking to both Chapman and Maxwell, or only to Maxwell.

Chapman and Maxwell's first task that shift was to install cord grips on the rig's pipe rack system. As Chapman was on his way to take some required paperwork for the pipe rack job to the ballast control office, he passed the gauges still attached to the HVAC system and decided to remove them. Chapman testified that he tightened the valve on the port to which the gauges were attached before removing the gauges, which should have shut off the flow of Freon, a refrigerant. The valve did not close, and as he removed the gauges, Freon sprayed out of the port and onto Chapman's hands, which were protected by only thin gloves that Chapman described as having the consistency of panty

No. 11-30077

hose.  The Freon resulted in serious chemical burns to Chapman's hands. ENSCO contends that Chapman did not close the shut-off valve correctly.

After his injuries, Chapman underwent several months of treatment, and contends that he still has restricted use of his left hand. . He has not returned to work at ENSCO, nor has he resumed any type of offshore work.  About a year after his injuries, Chapman filed suit against ENSCO, asserting negligence under the Jones Act,[1] unseaworthiness, and claims for maintenance and cure. After a trial, the jury found against Chapman on all of his claims.  Chapman now appeals, asserting two points of error: (1) the district court erred in excluding an incident investigation report as inadmissible hearsay, and (2) the jury clearly erred by finding that ENSCO was not negligent in a manner which caused the injuries to Chapman's hands.  We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II

Chapman contends that the district court erred in excluding an incident investigation report as inadmissible hearsay.  We review a district court's evidentiary rulings for an abuse of discretion.[2]  Even if an evidentiary ruling was in error, however, we will not reverse unless "the error affects a substantial right of the party."[3]

According to Chapman, the report was important to his case because it performed a root-cause analysis of the accident and had several findings supporting his case, including: (1) Chapman did not receive an orientation upon

---

[1] 46 U.S.C. § 30104.

[2] *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 423 (5th Cir. 2006).

[3] FED. R. EVID. 103(a); *see also Viazis v. Am. Ass'n of Orthodontists*, 314 F.3d 758, 767 (5th Cir. 2002) ("In any event, we will not reverse erroneous evidentiary rulings unless the aggrieved party can demonstrate 'substantial prejudice.'" (quoting *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 602 (5th Cir. 2000))).

No. 11-30077

joining the ENSCO 7500, (2) heat-insulating gloves were not available on the rig, and (3) there was a lack of communication regarding the Safe System of Work, a system put in place by ENSCO requiring the review and completion of various items of paperwork prior to performing a job in order to apprise rig workers of the risks and hazards of performing a certain task.

Prior to trial, ENSCO filed a motion in limine, arguing that the incident investigation report is evidence of subsequent remedial measures because the report contains several suggested corrective measures, and is therefore inadmissible.[4]  The district court ruled that the document was inadmissible hearsay and did not reach the subsequent remedial measures issue.  In its order, the district court specifically ruled that "[t]he document may be used for impeachment," and that "Mr. Rusty Fox [the author] may testify as to his observations about the accident."

Chapman argues on appeal that the report falls within the business records exception to the general rule excluding hearsay.[5]  Chapman, however, cites nothing in the record establishing that the document meets the requirements for invoking that exception.  He baldly asserts that the report "was an ordinary business record kept in the course of ordinary business," and cites Fox's deposition, which was not in evidence at trial, and in any event only establishes that Mr. Fox prepared the document after conducting his investigation.  It does not establish that the report meets the requirements of the business records exception.

Chapman additionally asserts that the document is not hearsay because the author, Rusty Fox, testified at trial.  The mere fact that Fox testified, however, does not have any bearing on whether the document itself is hearsay.

---

[4] *See* FED. R. EVID. 407.

[5] *See* FED. R. EVID. 803(6).

No. 11-30077

Chapman also argues that the district court abused its discretion by sua sponte ruling that the report was inadmissible hearsay. He cites a single case, which holds that a district court should give a party notice and an opportunity to respond before dismissing an *action* sua sponte.[6] Chapman argues that the district court should similarly have provided him with notice and an opportunity to respond before excluding the report as inadmissible hearsay. Dismissing claims, however, is very different from excluding evidence, and Chapman cites no cases and makes no arguments in support of extending the law for dismissing claims sua sponte to the present case. Furthermore, Chapman did not argue below that the report was not inadmissible hearsay. In addition, a leading authority on the law of evidence notes that "[t]he trial judge can take steps to insulate the jury from inadmissible evidence without any objection or other request to do so from the parties."[7] For all of the above reasons, the district court did not abuse its discretion in excluding the report as inadmissible hearsay.

Even if Chapman had raised a ground for the admission of the report, we could not reverse the decision because Chapman has not shown that his substantial rights were affected by the ruling. The order excluding the report explicitly allowed Fox to testify as to his observations about the accident. He could, therefore, have testified as to his findings, and the report would have been merely cumulative.[8] Chapman did not call Fox to testify and instead questioned

---

[6] *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006).

[7] CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE & PROCEDURE § 5042, at 970 (2d ed. 2005); *see also United States v. Del Llano*, 354 F.2d 844, 847 (2d Cir. 1965) ("A trial court may, of course, exclude evidence on its own motion even before any objection has been made . . . .").

[8] *See Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990) (holding the exclusion of accident reports harmless because all of the information contained in the reports was available through testimony).

No. 11-30077

him only on cross-examination.  Because Fox was available to testify about his findings, exclusion of the report could not have affected Chapman's substantial rights.

## III

Chapman also asserts that the jury's verdict that ENSCO was not negligent in a manner that caused his injury was clearly erroneous. We construe this argument as a challenge to the sufficiency of the evidence supporting the jury's verdict, and therefore a challenge to the district court's failure to grant judgment as a matter of law to Chapman.[9]

"A claimant who bears the burden of proof and who believes that he is entitled to judgment as a matter of law, is also obliged to move for judgment as a matter of law before the case is submitted to the jury."[10]  Chapman, however, never moved for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure.  We consequently review Chapman's challenge to the sufficiency of the evidence for plain error.[11]  We must determine whether there was any evidence to support the jury verdict.[12]  If any evidence supported the verdict, we will not overturn it.[13]

There was ample evidence adduced at trial to support a finding that any negligence was solely Chapman's.  For example, there was testimony in support of the following: Maxwell, not Chapman was instructed to remove the gauges;

---

[9] *See Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 170-71 (5th Cir. 2005) (construing an assertion that the jury committed clear error as an argument that the district court erred in denying a motion for judgment as a matter of law).

[10] *United States ex rel. Wallace v. Flintco, Inc.*, 143 F.3d 955, 967-68 (5th Cir. 1998) (citing FED. R. CIV. P. 50(a)).

[11] *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 995 (5th Cir. 2008); *Flintco*, 143 F.3d at 963-64, 968.

[12] *Flintco*, 143 F.3d at 964.

[13] *Id.*

6

No. 11-30077

Chapman was not supposed to be removing the gauges at the time of his accident, but was supposed to be working on the pipe rack system; Chapman did not perform and review the necessary paperwork and obtain the proper permit for removing the gauges, which would have informed him of the risks and the safety measures he should have taken; Chapman did not use a tool that was made to close the valve at issue, even though such a tool was on board; and insulated gloves were on board, but Chapman never asked for them. An expert testified that ENSCO did nothing wrong. There was also evidence that after the accident, Chapman said, "I messed up. I screwed up." At trial, Chapman said, "Accidents happen, man. You cannot control them. They're going to happen no matter how safe you are." This evidence, which is not an exhaustive list, easily satisfies the "any evidence" standard. We accordingly will not disturb the jury's verdict.

*     *     *

For the foregoing reasons, the judgment of the district court is AFFIRMED.