666 So.2d 1320 (1996)
Bill ASHLEY, et al., Plaintiffs-Appellees,
v.
GENERAL MOTORS CORPORATION, Defendant-Appellant.
No. 27851-CA.
Court of Appeal of Louisiana, Second Circuit.
January 24, 1996.
Gerald M. Johnson, Jr., Shreveport, for Appellant.
Ramon Lavitte, Shreveport, for Appellee.
*1321 Before BROWN, STEWART and GASKINS, JJ.
BROWN, Judge.
General Motors appeals a trial court's ruling in favor of plaintiffs, Bill and Ocie Ashley, that the accelerator assembly in a 1984 Oldsmobile Cutlass automobile was unreasonably dangerous. We reverse.

FACTS
A 1984 Oldsmobile Cutlass automobile manufactured by defendant, General Motors Corporation, was originally purchased by the mother and stepfather of plaintiff, Ocie Ashley. The Oldsmobile was driven by Mrs. Ashley's mother until she became ill in September of 1988. Thereafter, Mrs. Ashley used the car to run errands for her mother. Mrs. Ashley took possession of the Oldsmobile following her mother's death in November of 1988.
While driving the Oldsmobile on November 10, 1989, Mrs. Ashley had an accident at the intersection of Lakeshore Drive and Portland Avenue in Shreveport, Louisiana. Mrs. Ashley, who was driving west on Lakeshore, came to a stop and then started to turn left onto Portland when the car suddenly and unexpectedly accelerated. Only then did Mrs. Ashley see the approach of oncoming traffic. The Oldsmobile crashed into a car being driven east on Lakeshore by Geneva Woodard. Mrs. Ashley sustained a broken ankle which required extensive surgery. This injury left Mrs. Ashley with a fifteen percent (15%) disability and restricted her ability to return to her previous employment. The accident caused extensive damage to the Oldsmobile.
At the time of the accident, the Oldsmobile was five years old and had been driven 75,621 miles. Mrs. Ashley, who owned another vehicle, drove the Oldsmobile only occasionally. After taking possession of the Oldsmobile, Mrs. Ashley replaced the tires and brake pads. No other information was presented concerning the maintenance or repair history on the vehicle.
Plaintiffs filed suit on November 20, 1990 alleging the defective manufacture or design of the car's accelerator as the cause of the accident and the ensuing personal injuries. At trial, plaintiffs' mechanic, James Edwards, was accepted as an expert in automobile repair. Mr. Edwards testified that after the Oldsmobile was towed to his garage he observed the car's throttle to be open beyond the normal idling position.
Defendant offered the expert testimony of an automotive engineer. The engineer stated that his inspection of the vehicle revealed no anomalies in the accelerator system. The Oldsmobile was subject to a General Motors factory warning bulletin regarding the potential failure of the vehicle's cruise control. The bulletin warned that a small nylon bushing in the cruise control servo bracket may slip out of place and "may cause intermittent increases in engine speed or dieseling ... (and if the bushing remains out of place the servo rod assembly could wear through) and possibly result in a stuck throttle." The defense expert examined the appropriate parts on the Oldsmobile and found the nylon bushing intact and the cruise control functioning properly. General Motors argued that the accident resulted because Mrs. Ashley unconsciously pressed the accelerator and noted her testimony on cross-examination that she could not recall whether she might have hit the accelerator pedal by accident.
The trial court accepted the testimony of plaintiffs' mechanic and that of Mrs. Ashley and concluded that plaintiffs had met their burden of proof under the Louisiana Products Liability Act, LSA-R.S. 9:2800.51, et seq. ("the Act"). Special damages of $13,504.80 and general damages of $20,000 were awarded. General Motors appeals the holding that the requisite burden of proof for a claim under the Act was met.

DISCUSSION
The Louisiana Products Liability Act establishes the exclusive theories of liability for manufacturers for damage caused by their products. A claimant may not recover *1322 from a manufacturer for damages caused by a product on the basis of any theory of recovery not set forth in the Act. LSA-R.S. 9:2800.52. A manufacturer shall be liable to a claimant for damages proximately caused by an unreasonably dangerous product when such damage arose from a reasonably anticipated use of the product. LSA-R.S. 9:2800.54(A). Obviously the Oldsmobile was being used as anticipated. Thus, the issue presented is whether plaintiffs met their burden of proof in establishing that the car was "unreasonably dangerous."
A product may be deemed unreasonably dangerous due to its composition or construction, its design, the manufacturer's failure to provide an adequate warning, or the product's failure to conform to an express manufacturer's warranty. LSA-R.S. 9:2800.54(B). A claimant seeking recovery under the Act bears the burden of proving the existence of an alleged defect. LSA-R.S. 9:2800.54(D).
Plaintiffs made no allegations concerning the absence of a warning or the failure of the Oldsmobile to conform to express warranties. Rather, plaintiffs' trial presentation was directed toward proving that the Oldsmobile's accelerator system was defective in its construction, composition, or design.
A product is unreasonably dangerous in construction or composition if, at the time the product left the manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or if the product deviated from otherwise identical products made by the same manufacturer. LSA-R.S. 9:2800.55.
A product is unreasonably dangerous in design if, at the time it left the manufacturer's control, there existed an alternative design that would have prevented the claimant's damage, provided the likelihood and gravity of damage outweighs the burden of the alternative design and the adverse effect on the product's utility. LSA-R.S. 9:2800.56.
In the instant case, plaintiffs offered no evidence regarding General Motors' specifications and performance standards for the accelerator system on the 1984 Oldsmobile Cutlass. Neither did plaintiffs prove that the accelerator system on their car deviated in any fashion from the identical system installed on similar cars.
Although plaintiffs introduced the cruise control warning bulletin, they presented no evidence that their car actually suffered the problem described in the bulletin. Plaintiffs' expert did not examine the cruise control unit or the throttle blades on the Oldsmobile. He made only a visual inspection without removing the air cleaner.
Defendant's expert testified that the alleged cruise control defect had caused unintended acceleration in only four of an estimated two million vehicles. Moreover, the defense expert inspected the Oldsmobile's cruise control unit and found that the defect described in the bulletin was not present. He also removed the air cleaner, examined the throttle blades and lever and found the accelerator system intact and operational. Plaintiffs failed to prove that the accelerator system of their car was unreasonably dangerous due to its construction or composition.
Plaintiffs also failed to prove that the accelerator system was unreasonably dangerous due to its design. No evidence was presented to suggest that an alternative, safer design existed that would have prevented the injuries sustained by Mrs. Ashley.

CONCLUSION
Plaintiffs successfully proved that an accident occurred and that Mrs. Ashley sustained a broken ankle. We cannot, however, infer the existence of a defect based solely on the fact that an accident occurred. The Louisiana Products Liability Act specifies clearly the prerequisites for establishing the existence of a defective product and places the burden of proof on the claimant. While *1323 plaintiffs presented evidence that their car was subject to a warning issued by the manufacturer and that the car's throttle was opened beyond the normal idling position, this evidence alone is insufficient to satisfy the prerequisites spelled out in the Act. The issue here is not credibility of the evidence but the sufficiency of the evidence. The trial judge erred in concluding that plaintiffs met the necessary burden of proof. Accordingly, we reverse.
REVERSED.