739 So.2d 950 (1999)
James McDOWELL, Mary Ireen McDowell and State Farm Mutual Automobile Insurance Company, et al.
v.
DON BOHN FORD, INC. and Ford Motor Company.
No. 99-CA-238.
Court of Appeal of Louisiana, Fifth Circuit.
July 27, 1999.
Fred M. Trowbridge, Jr., New Orleans, LA, For Plaintiffs-Appellants.
Carl A. Butler, New Orleans, LA, Michael G. Cordes, New Orleans, LA, For Defendant-Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., SOL GOTHARD and ROBERT L. LOBRANO, Judge Pro Tempore.
DUFRESNE, Judge.
This is an appeal by James McDowell, his wife Mary Irene, and State Farm Mutual Automobile Insurance Company, plaintiffs-appellants, from an adverse judgment in their suit against Ford Motor Company, defendant-appellee, alleging that a manufacturing defect in the wiring of the McDowells' Ford vehicle caused a fire which totally destroyed it. Because *951 we find neither legal nor manifest factual error in the actions of the trial judge we affirm that judgment.
The undisputed facts are these. In December of 1994, the McDowell's bought a 1994 Ford Explorer. Some two years later, in February of 1997, Mary McDowell was driving home from work and put on the defroster to clear the windshield. After driving one or two miles, she switched the temperature control to the heater. After traveling a little further, she noticed smoke coming out of the vents on the front passenger side of the dash. When the smoke thickened, she pulled off the road into a parking lot and got out to call the fire department. By the time the fire truck arrived some ten minutes later the passenger compartment had been consumed in flames. Although the fire was for the most part confined to the interior of the car, rather than the engine compartment, the vehicle was nonetheless a total loss.
State Farm paid $20,512.12 under the terms of its comprehensive insurance policy, and the McDowells lost $488.28 which included their deductible and the cost of an alarm system which had been installed by an independent alarm company. These parties sued Ford Motor Company for these amounts, claiming that a defect in the wiring under the passenger side dash caused the fire and resulting damages. At a bench trial it was shown that the purchasers had installed in the vehicle a mobile phone, trailer hitch wiring, and an alarm system, and that all of these installations involved tapping into the existing electrical system. After hearing the evidence, the trial judge noted that plaintiffs had not shown that more probably than not the fire was caused by manufacturer's wiring defect. He also stated that the doctrine of res ipsa loquitur was not available to plaintiffs because they failed to exclude inferences that the fault of third parties [i.e. the installers of the phone, trailer hitch, and alarm system] were the cause of the loss. He therefore ruled in favor of defendant Ford Motor Co. Plaintiffs now appeal.
Three assignments of error are urged. The first two actually raise the same issue, which is whether the trial judge was manifestly wrong in finding that plaintiffs failed to show by a preponderance of the evidence that the cause of the fire was more likely than not a manufacturing defect. The third assignment asserts that the doctrine of res ipsa loquitur should have been applied here.
As to the first two alleged errors, plaintiffs contend that they did indeed show that the most probable cause of the fire was a defect in a manufacturer's wiring harness. They first called James McDowell, the owner, who testified that he watched the installation of the alarm and telephone and in both cases no work was done on the passenger side either in the engine compartment or in the interior. They then called their expert, Robert Alonzo, who described his investigation of the fire. He said that after his first inspection he thought the fire had originated in the missing blower motor located on the passenger side about half way up the fire wall. Upon his second inspection, this time having access to the blower motor which had been found in the tow truck, he concluded that this motor was not the origin of the fire because it showed no signs of any arcing. Instead, he decided that it must have been the wiring because there was nothing else under the dash on the passenger side which could be the source of any ignition except those wires. He admitted that he found no arcing on these wires either, but surmised that the copper in those wires annealed from the heat at the point of failure and crumbled, thus destroying any concrete evidence of what had actually happened.
Alonzo further explained that there were three possibilities as to how a fire could originate in the wires. One, there may have been a loose connection; two, there may have been a splice in the factory wiring that shorted out; or three, the insulation *952 on a wire may have been rubbed off against a hard surface under the dash due to vibration. Although he could not say which specific failure was involved, he nonetheless was convinced that the fire resulted from a defect in the wiring. He ruled out possible damage due to installation of the alarm, phone and trailer hitch because he did not find that any of the wires used in those installations were tied into the preexisting wires at points under the passenger side dash. He did admit, however, that he was not familiar with the exact procedures used to wire a Viper alarm, the brand that had been installed in the car.
Ford presented its own expert, Paul Laskowski. This witness said that he had not had an opportunity to inspect the vehicle prior to trial and gave the following explanation. He noted that Ford had received a claim letter from plaintiffs in March of 1997, informing it of the loss and stating that the vehicle would be available for inspection for thirty days. He said that because of the large number of claims that Ford receives, it was unable to conduct an inspection within that time. By the time suit was filed on May 30, 1997, the vehicle had already been disposed of by State Farm. Laskowski said that he had been given Alonzo's report as well as all other available information about the fire, and was thus able to come to some conclusions.
He did not dispute that the fire originated in the passenger compartment under the right side of the dash, or that it was probably electrical in origin. He did dispute Alonzo's assertion that it necessarily resulted from a manufacturer's defect. He said that he had read the Viper installation manual and it indicated that the components of the system should be located as high up under the dash as possible to avoid detection. He noted that his would involve placing about 75% of those components among the preexisting wires under the dash. He also noted that this system has to be tied into the electrical system at several points. He admitted that he did not have access to any records of the actual installation, but it was otherwise represented by Ford's counsel that those records had been subpoenaed from the installer, but were unavailable.
Laskowski was unable to say exactly what caused the fire because he had not examined the vehicle, and he said that Alonzo's report was not much help either because in his opinion it was incomplete. He said that in his experience with electrical fires it was necessary to examine the entire system, rather than just the area of the fire, because often the problem leading to the fire was found elsewhere in the vehicle. He testified that when electrical equipment has been added to a vehicle and there is a subsequent fire, those systems should be thoroughly examined to determine if they played a part in the fire, but Alonzo's had not done so.
In regard to Alonzo's theory that because no work was done on the passenger side in installing the various non-Ford components, the fire must have been due to a defect in the Ford equipment, Laskowski gave the following response:
I can say, though, even if you're installing components under the dash on the left-hand side, you may disrupt components on the right-hand side. You may have to loosen up components that would dislodge other things.
When asked if anything that he had heard in court or learned in his investigation could eliminate the involvement of any of the devices installed after the car was sold, he said "no."
Based on the above evidence the trial judge ruled in favor of Ford. As noted above, the judge found as a matter of fact that plaintiffs had failed to show that more probably than not the fire was caused by a manufacturing defect in the wiring. He also stated that the doctrine of res ipsa loquitur was not available to plaintiffs because there was sufficient evidence presented to show that the fire was probably *953 due to the conduct of parties other than the defendant, Ford Motor Co. Because these conclusions are based on the trier of fact's assessment of the evidence and inferences drawn from this assessment, the manifest error standard is applicable to appellate review of this matter. Under that standard, when the inferences drawn from evidence are reasonable, considered in the context of the entire record of the case, those inferences will not be set aside on appeal, even if the appellate court might have drawn different inferences had it been sitting as the trier of fact, Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993).
In the present case, both experts agreed that the fire broke out in the wiring under the right dash, and that there was no direct evidence to establish the exact cause of this fire. However, plaintiffs' expert testified that a fire can be caused by wiring if there is a loose connector or a short in a splice, or if the insulation is damaged, and concluded that such a condition could have existed only if the original wiring were defective. Ford's expert said that if the alarm was installed as per the Viper manual, then the work on the wires under the left dash could well have disturbed the wires under the right dash and loosened components. Putting these opinions and the underlying factual assumptions upon which they were based together, and giving more credibility to the opinion of Ford's expert, then a reasonable inference to be drawn is that disturbance of the wiring during the installation of the alarm, rather than an original defect, caused the fire. Because this inference is also reasonable in view of the entire record, we are precluded from setting it aside.
We also must reject plaintiffs' argument here that the doctrine of res ipsa loquitur should have resulted in judgment in their favor. That doctrine is a rule of circumstantial evidence in which negligence is inferred because in common experience the incident in question would not normally occur in the absence of negligence. However, if there is another equally plausible explanation for the occurrence, then application of the doctrine is defeated. Cangelosi v. Our Lady of the Lake Medical Center, 564 So.2d 654 (La.1989). Thus in the present matter, even if it could be said that the trier of fact fell into manifest error in concluding that more probably than not the installation of the post-sale devices caused the fire, that would not entitle plaintiffs to judgment. Rather, it would also have to be shown that he also fell into manifest error in concluding that Ford's explanation was as plausible as that of plaintiffs. The record shows otherwise. As the above discussion of the evidence clearly demonstrates, it is as plausible that the wires under the right dash were damaged during installation of the alarm, as that they were defective when manufactured. Because these explanations are equally plausible, the application of the doctrine of res ipsa loquitur was properly rejected by the trial judge.
For the foregoing reasons, the judgment in favor of Ford Motor Company is hereby affirmed.
AFFIRMED