752 So.2d 260 (2000)
Danny D. JURLS, et ux., Plaintiffs-Appellants,
v.
FORD MOTOR COMPANY, et al., Defendants-Appellees.
No. 32,125-CA.
Court of Appeal of Louisiana, Second Circuit.
January 6, 2000.
Rehearing Denied January 26, 2000.
*261 Johnson & Placke by Don H. Johnson, West Monroe, Counsel for Appellants.
McGlinchey Stafford by Margaret Diamond, Michael M. Noonan, New Orleans, Darrel J. Papillion, Counsel for Appellees.
Before NORRIS, C.J., BROWN, WILLIAMS, STEWART and PEATROSS, JJ.
STEWART, J.
Plaintiffs, Danny D. Jurls and Betty Jean Jurls, appeal a judgment dismissing their products liability action against Ford Motor Company ("Ford"). The trial court granted Ford's motion for directed verdict at the close of the plaintiffs' presentation of their case to the jury. We now reverse *262 the trial court's judgment and remand for further proceedings.

FACTS
Danny Jurls ("Jurls") purchased a 1989 Ford Ranger pick-up truck from a Ford dealership in September 1989. The vehicle was a demonstrator model with approximately 5,000 miles on the odometer and came equipped with a cruise control system. Jurls drove the vehicle for two months, logging about 2,000 miles, prior to the accident at issue. No mechanical problems occurred during this time.
The accident at issue occurred on November 14, 1989, during Jurls' return home to Bossier City from work. Jurls was employed as a teacher at Princeton Elementary School in Haughton, Louisiana. Jurls typically traveled to and from work along Interstate 20 ("I-20"). The accident occurred as Jurls exited I-20 at Airline Drive in Bossier City. Jurls testified that he set the cruise control at 65 m.p.h. for his drive along I-20. Upon entering the city limits of Bossier City, he reduced his speed to 55 m.p.h. As he approached the Airline Drive exit, Jurls applied the brakes to slow down before entering the exit ramp. Jurls testified that he felt his speed was under control and that he did not remove his foot from the brake pedal. Then, Jurls felt the vehicle increase in speed as though coasting. He pressed down on the brake pedal twice to no avail. He believed that the brakes on his vehicle had gone out. Jurls then attempted to slow the vehicle by pressing the clutch and shifting gears from fifth to second. The engine began "screaming." Believing that the vehicle would kill him, Jurls turned the key off. The steering column stiffened as the vehicle entered the intersection at Airline Drive, and Jurls "just kind of folded up ... and rode with it." The vehicle crossed the intersection on a red light and flipped three or four times, seriously injuring Jurls and totaling the vehicle.
Deborah Oswald, a passenger in a vehicle traveling northbound on Airline Drive, witnessed the accident. Oswald first noticed Jurls traveling on the I-20 off-ramp. Oswald testified that it appeared as though the vehicle was increasing in speed and as though Jurls could not stop the vehicle. However, Jurls was able to maintain sufficient control of his vehicle to go around other vehicles without hitting them. Oswald heard Jurls say that he could not stop his vehicle. Additionally, Nancy John Chance, the driver of the vehicle in which Oswald was riding, also testified that she saw Jurls' vehicle on the off-ramp and that it did not appear to be slowing and that it did not look like Jurls could stop it. Chance also heard Jurls say immediately after the accident that the brakes would not work.
When paramedics and police arrived at the accident scene, Jurls told them that the brakes would not stop the vehicle. Officer Kevin Ross of the Bossier City Police Department investigated the accident. Officer Ross' testimony regarding his investigation corroborates Jurls' version of how the accident occurred. Although Jurls initially believed that the brakes on his vehicle had failed, he learned shortly after the accident that the brakes worked. Jurls then came to believe that the cruise control system must have malfunctioned. Phillip J. Mijka, a design analysis engineer employed by Ford, inspected Jurls' vehicle in January 1990.
Mijka's inspection first eliminated the possibility of a linkage problem with either the engine or accelerator as a cause of the accident. With linkage eliminated as a possible problem, Mijka agreed with Jurls' counsel that only two possibilities remained: either the cruise control did not respond or Jurls' foot remained on the accelerator. Mijka then conducted a visual inspection of the cruise control system, checking the speedo cable routing, wiring in the engine compartment, and the connections using a screw driver test. All checked out fine. Mijka then used a *263 cruise control analyzer, also referred to as a rotunda device, which uses an auxiliary battery source to check the brake and clutch switches. This test indicated that the brake and clutch switches made an electrical connection or circuit when moved. The vacuum dump valve was tested by sucking on it and by applying a vacuum gauge. Both tests appeared positive. However, all parts of the cruise control system could not be tested. Mijka could not test the servo operator because the vehicle could not be started. Also, the amplifier could not be tested, and the speed sensor could not be located, possibly due to damage from the accident. Mijka testified that after his inspection, he determined that at least four systems were operating which could have disengaged the cruise control: the off switch on the cruise control, the brake switch, the clutch switch, and the dump valve. However, Mijka admitted that if the system computer, which was not tested, was not working, then neither the signal from the clutch or brake switch may have disengaged the cruise control.
After Mijka's inspection, Jurls hired a repairman to remove the cruise control components from the vehicle before it was scrapped. The cruise control parts were stored in a garage owned by a friend of Jurls and later turned over to Jurls' attorney. Jurls and his wife filed suit against Ford for damages, alleging that the vehicle's cruise control system was defective. After withstanding two summary judgment motions, the matter proceeded to trial before a jury. In addition to the testimony of Jurls, Officer Ross, the two witnesses to the accident, and Mijka, the record also includes the testimony of two additional witnesses called by the plaintiffs.
Victor DeClerc, a design analysis engineer employed by Ford, was called by the plaintiffs on cross-examination, as was Mijka. On the Tuesday before trial, DeClerc tested the parts of the cruise control system that had been removed after the accident. Plaintiffs' counsel first questioned DeClerc about the meaning of "overspeeding" as that term was used in a 1989 Ford shop manual. DeClerc explained that the term was used in the context of testing the speed control of a vehicle raised on a hoist and not being driven. Declerc was not aware that the shop manual also contained a caution regarding overspeeding in the context of a road test. When informed of this fact, Declerc explained that the caution applied to technicians working on vehicles with speed control problems and that drivers would not, in all likelihood, see such problems. DeClerc also testified that though he researched various reports to get a global picture on overspeeding, he did no specific research on complaints of cruise control problems with Ford.
DeClerc tested the parts remaining from Jurls' cruise control system by placing them on another 1989 Ford Ranger. De-Clerc was unable to test the dump valve, the speed sensor, or the wiring from Jurls' vehicle; he was able to test the amplifier and servo mechanism which had not been tested by Mijka. Though the test vehicle would not start at first due to problems with the clutch switch from Jurls' vehicle, DeClerc's test of the cruise control system revealed no malfunction. DeClerc did testify that the engine noise heard by Jurls when he attempted to shift gears could result from only two possibilities: the cruise control or Jurls' foot inadvertently placed on the accelerator.
Testifying on the plaintiffs' behalf was Donnie Tuminello who qualified as an expert in automobile mechanics. The most likely cause of the accident, according to Tuminello, was failure of the dump valve to release when the brakes were pressed and disengage the cruise control, thereby resulting in overspeeding. Tuminello discussed the overspeeding caution included in the Ford shop manual and believed that the problem mentioned in the manual was what happened in this instancethe cruise control did not disengage when *264 Jurls applied the brakes.[1] Tuminello agreed with Mijka and Declerc that the overspeeding, as indicated by the engine noise when Jurls attempted to shift gears, resulted from either the cruise control or Jurls' inadvertently pressing the accelerator. Tuminello participated in Declerc's testing of the cruise control parts from Jurls' vehicle. Although Tuminello did not criticize the testing when conducted, at trial he stated that the test using the substitute Ford Ranger was not a valid test of the cruise control system because all the parts from Jurls' vehicle were not available. Tuminello mentioned that the amplifier, the "brain of the system," could not be properly tested because the schematic was not available from Ford. Tuminello also believed that the fuses from Jurls' vehicle were not tested. Although Tuminello stated that he did not believe Ford made a defective part, he later explained the comment by stating that Ford does not make a defective product, but that there had to be a defect in order for the cruise control system in the Jurls' vehicle to have malfunctioned.
At the close of the plaintiffs' case, Ford moved for a directed verdict. The trial court found that the plaintiffs failed to prove the existence of a defect and that reasonable minds could not conclude that there was a defect in the vehicle when it left the manufacturer. The trial judge also indicated that he would not allow the matter to go before a jury only to try to get sympathy for the plaintiffs because Ford is a large corporation. Plaintiffs appeal the judgment dismissing their claim against Ford and contend that the evidence was sufficient to allow the jury to reasonably conclude that the accident was caused by a defect in their vehicle's cruise control system.

DISCUSSION
A motion for a directed verdict is appropriately made at the close of the evidence offered by the opposing party. The motion should be granted when, after considering all the evidence in the light most favorable to the opposing party, the facts and inferences so overwhelmingly favor a verdict for the moving party that the trial court believes reasonable jurors could not have arrived at a contrary conclusion. La. C.C.P. art. 1810; Collins v. Whitaker, 29,324 (La.App.2d Cir.4/2/97), 691 So.2d 820; King of Hearts, Inc. v. Wal-Mart Stores, Inc., 27,137 (La.App.2d Cir.8/23/95), 660 So.2d 524; Whitaker v. Mullinax, 628 So.2d 222 (La.App. 2d Cir. 1993), writ denied, 94-0382 (La.3/25/94), 635 So.2d 241. The decision of whether to grant a motion for a directed verdict is left to the discretion of the trial court. Collins v. Whitaker, supra. On review of the trial court's decision to grant a directed verdict, an appellate court must ask whether, viewing the evidence submitted, reasonable minds could not reach a contrary verdict. Additionally, the appellate court must evaluate the propriety of granting a directed verdict in light of the substantive law related to the claim. Steed v. St. Paul's United Methodist Church, 31,521 (La. App.2d Cir.2/24/99), 728 So.2d 931; Collins v. Whitaker, supra.
The substantive law applicable to the plaintiffs' claim against Ford is the Louisiana Products Liability Act ("LPLA"), La. R.S. 9:2800.51 et seq., which establishes the exclusive theories of liability for manufacturers for damage caused by their products. La. R.S. 9:2800.52. A manufacturer is liable for damages proximately caused by an unreasonably dangerous product when the damages arose from a reasonably *265 anticipated use of the product. La. R.S. 9:2800.54(A). A product may be unreasonably dangerous in construction or composition, in design, or because of the lack of an adequate warning or the failure to conform to an express warranty. La. R.S. 9:2800.54(B). The plaintiff bears the burden of proving the alleged defect. La. R.S. 9:2800.54(D); Ashley v. General Motors Corp., 27,851 (La.App.2d Cir.1/24/96), 666 So.2d 1320.
In their petition for damages, the plaintiffs alleged there was a defect in either the design or manufacture of the Ford Ranger and that Ford failed to warn that the cruise control system could malfunction as it did. Having waived both the design defect and failure to warn claims at trial, the plaintiffs' remaining theory is that of a manufacturing defect under La. R.S. 9:2800.55 which states:
A product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer.
At issue then is whether the plaintiffs presented evidence from which reasonable minds could reach the contrary conclusion that the cruise control system in the Ford Ranger was unreasonably dangerous as that term is defined in R.S. 9:2800.55.
We cannot infer the existence of a defect solely from the fact that an accident occurred. Ashley, supra. However, a manufacturing defect may be established by circumstantial evidence under the evidentiary doctrine of res ipsa loquitur. Kampen v. American Isuzu Motors, Inc., 119 F.3d 1193 (5th Cir.1997), vacated on other grounds, 157 F.3d 306 (5th 1998); Williams v. Emerson Elec. Co., 909 F.Supp. 395 (M.D.La.1995); Randolph v. General Motors Corp., 93 1983 (La.App. 1st Cir.11/10/94), 646 So.2d 1019), writ denied, 95-0194 (La.3/17/95), 651 So.2d 276; State Farm Mut. Auto. Ins. Co. v. Wrap-On Co., Inc., 626 So.2d 874 (La.App. 3rd Cir.1993), writ denied, 93-2988 (La.1/28/94), 630 So.2d 800. The res ipsa loquitur doctrine means that the circumstances surrounding an accident are so unusual as to give rise to an inference of negligence or liability on the part of the defendant. Under such circumstances, the only reasonable and fair conclusion is that the accident resulted from a breach of duty or omission on the part of the defendant. State Farm, supra. Jurisprudence has relaxed the exclusive control element associated with res ipsa loquitur. Williams, supra; Spott v. Otis Elevator Co., 601 So.2d 1355 (La.1992); State Farm, supra; Lucas v. St. Frances Cabrini Hospital, 562 So.2d 999 (La.App. 3d Cir.1990), writ denied, 567 So.2d 101, 567 So.2d 103 (La.1990).
The plaintiffs were not able to point to any specific defect which resulted in a malfunction of the cruise control system. However, the plaintiffs' expert, Donnie Tuminello, was able to point to possible causes for the alleged malfunction. Tuminello initially believed the most likely cause of the accident was the dump valve which failed to reduce pressure in the vacuum tank when the brake was applied and disengage the cruise control. Tuminello also suggested at trial that the cruise control malfunction could have resulted from some problem with either the amplifier or the clutch switch. While the tests performed on the available cruise control components by Ford's experts revealed no negative results, Tuminello's testimony called into question the absolute reliability of the tests performed to discover what may have malfunctioned in Jurls' vehicle at the time of the accident. Neither Mijka nor DeClerc was able to test all the components of the cruise control system either due to damage from the accident or because the repairman hired by Jurls to remove the parts after the accident failed to remove all necessary components. Particularly relevant to our consideration of *266 whether the directed verdict was properly granted is that all the expertsMijka, De-Clerc, and Tuminelloagreed that the engine noise heard by Jurls could only have been caused by one of the two following options: either Jurls inadvertently had his foot on the accelerator rather than the brake, or the cruise control system was engaged. No evidence shows that Jurls' foot was on the accelerator rather than on the brake.
In ruling on Ford's motion for a directed verdict, the trial court stated that the plaintiffs failed to put forth any expert testimony to establish a defect in the vehicle. The trial court's ruling suggests that only direct proof of a specific defect is sufficient to meet the burden of proof under the LPLA. However, as previously discussed, circumstantial evidence may be sufficient under the facts of a case to establish a manufacturing defect for purposes of liability under the LPLA. We note that the LPLA imposes liability on a manufacturer for "a characteristic of the product" that renders it unreasonably dangerous, and not a "specific" characteristic. See Williams, supra, at FN3.[2]
The trial court also relied upon our decision in Ashley, supra, as a basis for its ruling. However, there are factual distinctions between the case sub judice and Ashley, supra. Ashley involved an older vehicle which had been driven 75,621 miles. While a mechanic who examined the vehicle in Ashley after the accident found the throttle open beyond the normal idling position, the plaintiff did not specifically recall whether she stepped on the accelerator or the brake. The sudden acceleration accident in Ashley occurred after the plaintiff came to a stop then proceeded to turn left, a maneuver which would have required her to accelerate, thereby increasing the likelihood that the plaintiff actually had her foot on the accelerator rather than on the brake. In the case sub judice, the vehicle was new with approximately 7,000 miles on the odometer at the time of the accident. The accident occurred only two months after Jurls purchased the vehicle. Both immediately after the accident and at trial, Jurls was adamant that he applied the brakes and that the vehicle would not stop. The manner in which the accident occurred suggests the likelihood that Jurls would have been applying his brakes to slow the vehicle as it negotiated the exit from I-20. Based on these distinctions, we believe the circumstantial evidence in the present case is greater than that in Ashley, supra, and deserving of close scrutiny by a jury.
While the evidence put forth by the plaintiff in the present case is not overwhelming and not certain to result in a favorable verdict, we cannot say that it is so overwhelmingly deficient as to preclude the possibility that reasonable minds might find that the Ford Ranger was unreasonably dangerous under the LPLA. The absence of expert testimony indicating a specific defect in the vehicle is not dispositive of liability. A jury might infer that the product was unreasonably dangerous from the circumstantial evidence presented. The outcome is for the jury to decide. Therefore, we find that the trial court erred in granting a directed verdict in favor of Ford in this matter.

CONCLUSION
For the reasons discussed, we reverse the trial court's dismissal of the plaintiffs' action against Ford and remand for further proceedings consistent with this opinion. Costs of the appeal are assessed against Ford. Assessment of trial costs shall be deferred pending the outcome of further proceedings.
REVERSED AND REMANDED.
*267 WILLIAMS, J., dissents and assigns written reasons.
NORRIS, C.J., dissents for the reasons assigned by J. WILLIAMS.
WILLIAMS, J., dissenting.
Because the plaintiffs failed to present evidence to establish that the particular cruise control system installed in this specific vehicle materially deviated from the manufacturer's specifications or performance standards, I respectfully dissent.
The Louisiana Products Liability Act (LPLA) establishes the exclusive theories of liability for damage caused by manufacturers' products. LSA-R.S. 9:2800.52. A manufacturer shall be liable to a claimant for damage caused by an unreasonably dangerous product during a reasonably anticipated use. LSA-R.S. 9:2800.54. Ashley v. General Motors Corp., 27,851 (La. App.2d Cir.1/24/96), 666 So.2d 1320. A product is unreasonably dangerous in construction if, at the time it left the control of the manufacturer, the product deviated in a material way from the manufacturer's specifications or performance standards, or if the product deviated from otherwise identical products made by the same manufacturer. LSA-R.S. 9:2800.55. A claimant seeking recovery under the Act bears the burden of proving the existence of an alleged defect by a preponderance of the evidence. LSA-R.S. 9:2800.54(D). Ashley, supra.
In the present case, the majority attempts to circumvent the plaintiffs' burden of presenting some evidence that the product deviated from manufacturer specifications by relying on the evidentiary doctrine of res ipsa loquitur. This doctrine is a rule of circumstantial evidence in which negligence is inferred because in common experience the incident in question would not ordinarily occur in the absence of negligence. However, if there is an equally plausible explanation for the occurrence, then application of the doctrine is defeated. McDowell v. Don Bohn Ford, Inc., 99-238 (La.App. 5th Cir. 7/27/99), 739 So.2d 950. The circumstantial evidence presented must exclude reasonable hypotheses with a fair amount of certainty. Weber v. Fidelity & Casualty Ins. Co., 250 So.2d 754, 259 La. 599 (1971).
As an example of "circumstantial" evidence, the majority refers to the testimony of Tuminello, a retired auto mechanic. However, even if applying the res ipsa loquitur doctrine, Tuminello's recitation of "possible causes" for the alleged cruise control malfunction is not sufficient to establish an inference of liability because he was unable to exclude with a fair amount of certainty the reasonable hypothesis that Jurls was negligent in pressing the accelerator.
The plaintiffs argue that the witness testimony established a factual issue for the jury because DeClerc, Mijka and Tuminello all agreed that if the engine made a loud roaring noise when Jurls pressed the clutch, the two possible explanations were that his other foot was pressing down on the accelerator pedal, or that the cruise control was holding the throttle open. However, such testimony merely indicates two alternative reasons for the described racing of the engine, and does not relieve plaintiffs of their statutory burden to present evidence that the cruise control materially deviated from Ford's specifications.
In support of its reasoning, the majority cites the case of State Farm Mutual Auto. Ins. Co. v. Wrap-On Co., Inc., 626 So.2d 874 (La.App. 3rd Cir.1993), in which a fire caused damage to property, and the owner and his insurer sued the manufacturer of heating tape for pipes, alleging that the product was unreasonably dangerous and had caused the fire. Expert testimony ruled out all other sources of the fire and identified physical evidence such as burn marks on pipes, allowing an inference that the heat tape had malfunctioned and caused the fire.
Here, in contrast, the plaintiffs' expert failed to identify any physical evidence of malfunction and the majority itself has *268 pointed out that the expert testimony suggests that in addition to a cruise control problem, an equally possible cause of the roaring engine noise was the plaintiff's inadvertent pressing of the gas pedal. Because there is an equally plausible explanation for the occurrence, the doctrine of res ipsa loquitur is inapplicable and the majority's reliance thereon is misplaced.
Expert testimony based on speculation, conjecture and mere possibilities cannot support a judgment. Lott v. Lebon, 96-1328 (La.App. 4th Cir. 1/15/97), 687 So.2d 612, writs denied, 97-0359, 97-0414 (La.3/21/97), 691 So.2d 92, 95. Despite Tuminello's earlier affidavit opinion that the accident was caused by a vacuum dump valve malfunction, during trial he suggested that the cruise control did not work because of a possible problem with the amplifier. Although Tuminello acknowledged that he had not tested the amplifier and could not specify any physical evidence of amplifier failure, Tuminello speculated that there was "a possibility of some condition in that amplifier that could cause" a malfunction and that there were "alot of things that could have happened" to the amplifier.
Another possibility raised by Tuminello was that the clutch switch had malfunctioned, preventing the deactivation of the cruise control. He supported this suggestion by pointing out that the test vehicle would not start after the clutch from the Jurls vehicle was installed. Despite his stated concern about the clutch, at trial Tuminello maintained that he could not remember whether pressing the clutch had deactivated the cruise control during the test. However, Tuminello was able to recall that the brake had deactivated the cruise control and he acknowledged that he could not dispute DeClerc's testimony that the clutch had disengaged the system as well.
Although plaintiffs' expert witness mentioned several possible problems which could have affected operation of the cruise control under the circumstances of the accident, Tuminello's testimony was speculative at best and thus is not sufficient to support a jury finding that any of the cruise control components of the Jurls' 1989 pickup truck deviated in a material way from Ford's performance standards. To the contrary, the evidence shows that each of the cruise control parts which were tested functioned properly.
In an attempt to support their allegation that the cruise control was defective, the plaintiffs introduced into evidence a Ford service manual, which recognized the possibility of overspeeding, a condition where the throttle is held open. However, the plaintiffs did not present any evidence that their truck exhibited the problem described in the manual, other than the occurrence of the accident itself. A factfinder may not infer the existence of a defect in a product based solely on the fact that an accident occurred. Jaeger v. Automotive Casualty Insurance Co., 95-2448 (La. App. 4th Cir. 10/9/96), 682 So.2d 292, writ denied, 96-2715 (La.2/7/97), 688 So.2d 498.
The majority ignores the plaintiffs' burden of proof and apparently imposes upon defendant the burden of establishing that all of the cruise control parts worked properly. However, it is the plaintiffs who have the burden of proving by a preponderance of the evidence that a material deviation from the norm rendered the product unreasonably dangerous.
Although the plaintiffs proved that an accident occurred and that Danny Jurls sustained injuries, the plaintiffs failed to satisfy their burden of proving that the cruise control system in their pickup truck was unreasonably dangerous due to a material deviation from Ford's product specifications, as required by the Louisiana Products Liability Act. Consequently, the record in this case does not contain evidence, even when viewed in the light most favorable to plaintiffs, from which a reasonable juror could infer that the accident was caused by a defect in the cruise control of the plaintiffs' vehicle.
*269 Therefore, I cannot say that the trial court abused its discretion in granting the defendant's motion for a directed verdict. Accordingly, I would affirm the district court's judgment.

APPLICATION FOR REHEARING
Before NORRIS, C.J., BROWN, WILLIAMS, STEWART and PEATROSS, JJ.
Rehearing Denied.
NOTES
[1] The portions of the Ford shop manual pertaining to testing of the speed control system by conducting both a simulated road test and a road test include the following warning or caution:

IF AT ANY TIME DURING THE FOLLOWING STEPS THE SYSTEM SHOULD APPEAR TO GO OUT OF CONTROL AND OVERSPEED, BE PREPARED TO TURN THE SYSTEM OFF AT ONCE WITH THE OFF SWITCH OR THE IGNITION SWITCH.
[2] Williams, supra, addressed the evidence needed to survive summary judgment on an LPLA claim, rather than a directed verdict.