843 So.2d 571 (2003)
HANOVER AMERICAN INSURANCE COMPANY, Plaintiff-Appellant,
v.
TRIPPE MANUFACTURING COMPANY, Chubb Insurance Company, Gary Godard d/b/a Godard Tv Service and Commercial Union Insurance Company, Defendants-Appellees.
No. 37,060-CA.
Court of Appeal of Louisiana, Second Circuit.
April 9, 2003.
*572 Bienvenu, Foster, Ryan & O'Banion By John W. Waters, Jr., David E. Walle, New Orleans, for Appellant.
Mayer, Smith & Roberts By Caldwell Roberts, Caldwell Roberts, Jr., Shreveport, for Appellees, Trippe Manufacturing Company and Federal Insurance Company.
O'Neal Walsh & Associates By Matthew T. Lofaso, William J. Mitchell, II, Baton Rouge, for Appellee/Third-Party Defendant, Maida Development Company.
Bernard, Cassisa, Elliott & Davis By Howard B. Kaplan, Metairie, for Appellee/Third-Party Defendant, Magnetek, Inc.
Before WILLIAMS, CARAWAY and KOSTELKA (Pro Tempore), JJ.
KOSTELKA, Judge Pro Tempore.
Hanover American Insurance Company ("Hanover") appeals the grant of summary judgment in favor of Trippe Manufacturing Company ("Trippe") and Federal Insurance Company ("Federal"). Trippe also files an answer to Hanover's appeal. For the following reasons, the judgment of the trial court is reversed.

FACTS
This products liability lawsuit arises from fire damage to a building owned by Mr. and Mrs. James T. Strong (the "Strongs") which was leased to Easy Way, Inc. ("Easy Way"), a company owned by the Strongs. As a result of the fire, the building was destroyed, as was all of Easy *573 Way's inventory. Additionally, Easy Way's business was interrupted, allegedly resulting in lost profits and extra expense. The Strongs and Easy Way were insured by Hanover, which, as subrogee to the Strongs and Easy Way, brought this lawsuit.
Hanover named as a defendant, Trippe, the designer and manufacturer of an uninterruptible power supply ("UPS"), a device which provided electrical power to Easy Way's computer file server in the event of a power interruption. Hanover specifically claimed that the UPS was unreasonably dangerous in its construction and composition and in its design. Hanover further claimed that Trippe failed to warn of the alleged defects of the UPS. Also made a defendant was Trippe's insurer, Federal.[1] Trippe later named as third-party defendants, Magnetek, Inc. ("Magnetek")[2], the manufacturer of the transformer used inside the UPS, and Maida Development Company ("Maida"), the manufacturer of another component part used inside the UPS.
Trippe, Magnetek and Maida each filed separate motions for summary judgment. In its Motion for Summary Judgment, Trippe maintained that Hanover lacked sufficient evidence to carry its burden of proof under the Louisiana Products Liability Act. After oral arguments on the motions for summary judgment, the trial court granted Trippe's motion and dismissed the motions of Magnetek and Maida as moot upon Trippe's dismissal from the lawsuit. The trial court's judgment also dismissed Trippe's third-party claims against Magnetek and Maida. This appeal by Hanover ensued. Additionally, Trippe answered the appeal, requesting that the third-party demands against Magnetek and Maida be reinstated in the event its summary judgment is reversed.

DISCUSSION
Hanover appeals the grant of summary judgment in Trippe's favor and argues that material facts are in dispute, making summary judgment improper in this case. Specifically, Hanover maintains that its expert opinions are contrary to Trippe's expert opinion regarding the cause of the fire and the defective nature of the UPS and that the trial court erred in assessing the conflicting expert opinions on those issues.
In determining whether summary judgment is appropriate, appellate courts review the evidence de novo. Reynolds v. Select Properties, Ltd., 93-1480 (La.04/11/94), 634 So.2d 1180. Summary judgments are now favored. La. C.C.P. art. 966(A)(2). Nonetheless, both the evidence and all inferences drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in his favor. Willis v. Medders, 2000-2507 (La.12/08/00), 775 So.2d 1049; South Central Bell Telephone Co. v. Sewerage and Water Bd. of New Orleans, 94-1648 (La.App. 4th Cir.03/16/95), 652 So.2d 1090, writ denied, 95-0949 (La.05/19/95), 654 So.2d 1090. Ultimately, the burden of proof remains with the mover who must meet the initial burden of making a prima facie showing of entitlement to summary judgment. See, Mark Tatum and Judge William Norris, III, Summary Judgment and Partial Judgment in Louisiana: The State We're In, 59 La. L.Rev. 131, 141 (1998). Taking into *574 account these standards, we find that summary judgment is improper in the case sub judice.
Here, Hanover relies on the opinion of its retained experts as well as circumstantial evidence which it argues created material issues of fact regarding the cause of the fire and its claim of the defective construction or composition of the UPS. Hanover's experts appear by depositions filed as exhibits to pleadings made part of the record.[3] Trippe's expert appears by affidavit filed in support of its Motion for Summary Judgment. On appeal, Hanover argues that the expert opinions of the parties are conflicting, signifying a disputed material fact at issue, which makes summary judgment in this case improper. We agree.
One material fact at issue is the initial dispute of whether the fire was caused or ignited by the UPS. Specifically, Trippe argues that the fire was caused by a source external to the UPS. Hanover, on the other hand, maintains that the fire was ignited by the UPS due specifically to internal defects in the device. In ruling on Trippe's Motion for Summary Judgment, the trial court stated that "[A]ll agree that [the fire re-enactment testing] showed clearly that the problems with the UPS was [sic] post ignition. That has not been disputed by [Hanover] and neither today in argument nor in [b]rief has [Hanover's attorney] really strongly urged that he has expert testimony in support of his position...." Despite this finding by the trial court, the record reflects the opposite, and Hanover has expert testimony contrary to Trippe's position. The issue of whether the UPS burned as a result of the fire (which would make the "problems with the UPS" post-ignition problems) or whether the UPS itself ignited the fire are indeed contested facts in this litigation, despite the trial court's statement to the contrary.
In its Statement of Undisputed Facts, Trippe claims that it is undisputed, after a joint destructive inspection of the UPS and the transformer within it, that the "faults" or arcing of the copper wire in the transformer occurred after the ignition of the fire and could not be the source of the fire. In other words, Trippe takes the position that the fire was ignited somewhere other than by the UPS. This fact is reiterated in the opinion of Trippe's expert, Robert Bartlett ("Bartlett"), in his affidavit attached to Trippe's Motion for Summary Judgment. Bartlett states that the arcing or "faults" discussed by Montgomery in his deposition "... were all post-ignition arcing events or faults which occurred when the supporting structure of the UPS began to melt and deform due to the heat of the surrounding fire causing the transformer to sink downward and come into contact with the electrical leads ...." coming out of the UPS battery, which remained energized during the fire. Notably, other than what is contained in this affidavit, there is no elaboration by Bartlett regarding his opinion, i.e., there is no deposition testimony. There is no official report of the "joint destructive inspection" referred to in Bartlett's affidavit attached to Trippe's motion (other than reference to it by Trippe and Bartlett) *575 which would support the statements of supposed fact made by Bartlett.
On the other hand, Hanover's experts opine that the fire originated with the UPS. Hanover had two experts examine the scene shortly after the fire. Snow specialized in the investigation of fire scenes, having investigated ninety to one hundred fires a year since 1984 and opined as to the origination point of the fire. In his deposition, Snow stated that the investigation by the State Fire Marshal ruled out arson as a cause of the fire. This is undisputed by Trippe. He also described his particular investigation of the scene, explaining how he used a small shovel and his hand to go through the burned wood and other debris at the scene until he reached the area of the heaviest fire damage. Assessing the fire damage and burn pattern, Snow determined the location where it appeared the fire had originated. Once in the general area of origination, and through the process of elimination, he was left with the UPS as the source of the fire.
Hanover's other expert, Montgomery, also investigated the scene of the fire with Snow. Montgomery, an electrical engineer with experience in fire investigations, specialized in the identification of "electrical anomalies that have the potential to generate heat sufficient to ignite a fire." As to the UPS, Montgomery specifically noted that its internal copper wiring had melted or "beaded" ends, indicating a higher internal heat, because "copper melts at a temperature that is higher than flame temperatures of ordinary fires." Montgomery eliminated the other electrical devices in the vicinity of the UPS as being the cause of the fire, explaining that they were damaged by "invasive heat from an outside source" and agreed with Snow that the fire originated with the UPS.
In addition to the general claim regarding the UPS as the cause of the fire, Hanover specifically claims that the UPS was defective and Trippe is liable under the Louisiana Products Liability Act ("LPLA"), La. R.S. 9:2800.51 et seq., which establishes the exclusive theories of liability for manufacturers for damage caused by their products. La. R.S. 9:2800.52; See also, Jurls v. Ford Motor Co., 32,125 (La. App.2d Cir.01/06/00), 752 So.2d 260. A manufacturer is liable for damages proximately caused by an unreasonably dangerous product when the damages arose from a reasonably anticipated use of the product. La. R.S. 9:2800.54(A). A product may be deemed unreasonably dangerous due to its composition or construction, its design, the manufacturer's failure to provide an adequate warning, or the product's failure to conform to an express manufacturer's warranty. La. R.S. 9:2800.54(B); Ashley v. General Motors Corp., 27,851 (La.App.2d Cir.01/24/96), 666 So.2d 1320. The plaintiff bears the burden of proving the alleged defect. La. R.S. 9:2800.54(D); Jurls, supra; Ashley, supra.
In order to prove a product is unreasonably dangerous in construction or composition, it must be shown that at the time the product left the manufacturer's control, it deviated in a material way from the manufacturer's specifications or performance standards for the product, or if the product deviated from otherwise identical products made by the same manufacturer. La. R.S. 9:2800.55.[4]
In Montgomery's deposition, he explains his opinion regarding defects in the UPS *576 which could have ignited the fire.[5] After surveying the scene of the fire, Montgomery prepared his report. Then, subsequent to that report, but prior to his deposition, Montgomery studied the schematic diagram of the UPS. Based on these considerations, Montgomery opined that the ignition source of the fire was the UPS.
Specifically, in examining the UPS, Montgomery identified three "faults" in the device. Although he could not determine with specificity which of the three was the ignition source (due to severe fire damage to the wiring in the UPS), he opined that a short circuit in the UPS caused the "fault" which ignited the fire. Montgomery discussed precautions that could be taken in order to prevent such a short circuit from occurring. Montgomery also noted that after he reviewed the schematic of the UPS, he became aware that it contained metal oxide varistors, which he referred to as "MOVs." Montgomery stated, "[The MOV] will ignite whatever combustibles the conductor is going through,..." noting that it was a serious problem for the industry.[6]
In his affidavit, Bartlett, also an electrical engineer, stated that he examined the UPS remains removed from the fire, a UPS identical to the UPS involved in the fire, and the electrical schematic diagram of the UPS. He opined that the electrical design of the UPS met all applicable standards of electrical engineering design. Further, he stated that he was unable to identify any deviation in the construction of the UPS.
First, we note that a trial court is not to weigh the opinion testimony or evaluate the credibility of experts in determining whether to grant or deny a motion for summary judgment. If the opinions of the experts conflict, then the motion for summary judgment should be denied because there would exist a "genuine issue as to material fact." La. C.C.P. art. 966(B). Moreover, when the party opposing the summary judgment motion submits expert opinion evidence that would be admissible and that is sufficient to allow a reasonable juror to conclude the expert's opinion on a material fact more likely than not is true, the court should deny the summary judgment motion. Willis, supra at 1049, citing, Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.02/29/00), 755 So.2d 226. Here, it is clear that the experts have differing views regarding the cause of the fire and the potential defectiveness of the UPS.
Second, although Trippe argues that Hanover has failed to present factual support for one or more elements essential to its claims under the LPLA, we find that this is not the case. Hanover presented sufficient circumstantial evidence to prove that a defect in the composition or construction of the UPS may have ignited the fire. Although we cannot infer the existence of a defect solely from the fact that an accident occurred, a manufacturing defect may be established by circumstantial evidence. Jurls, supra; see also, Frank L. Maraist and Thomas C. Galligan, Jr., Louisiana Tort Law, § 15-9, 371 (1996). Moreover, circumstantial evidence may establish the existence of a genuine issue of material fact. Norton v. Claiborne Elec. Co-op, Inc., 31,886 (La.App.2d Cir.05/05/99), 732 So.2d 1256, writs denied, 99-1737 (La.10/01/99), 748 So.2d 443 and 99-1823 (La.10/01/99), 748 So.2d 454, citing, *577 Lyons v. Airdyne Lafayette, Inc., 563 So.2d 260 (La.1990). As discussed, Snow opined that the fire originated with the UPS. Montgomery opined regarding what he considered defects in the construction or composition of the UPS. Although Hanover does not clearly state what the performance standard might be for the UPS, obviously that standard does not include igniting a fire in normal operation. Trippe's assertion that Hanover has presented no evidence to prove a deviation in construction or composition is incorrect. Thus, considering the evidence presented, and that such evidence on summary judgment should be construed in favor of Hanover, we conclude that summary judgment in this case was improper.
Finally, in its answer to appeal, Trippe argues that its claims against Maida and Magnetek should be reinstated in the event its Motion for Summary Judgment is reversed. In its Judgment, the trial court dismissed Trippe's claims against Maida and Magnetek as moot as a result of the summary judgment in favor of Trippe. In light of our decision herein, Trippe's claims against Maida and Magnetek are reinstated.

CONCLUSION
Considering the foregoing, the summary judgment granted in favor of Trippe Manufacturing Company and Federal Insurance Company is hereby reversed, with Trippe and Federal to bear the costs of appeal. Additionally, the Judgment dismissing the claims against Maida Development Company and Magnetek, Inc. is also reversed.
REVERSED.
NOTES
[1] Chubb Insurance Company was originally named as Trippe's insurer, but Federal was subsequently substituted and answered the lawsuit. Trippe and Federal are collectively referred to herein as "Trippe."
[2] Although it is spelled various ways throughout the record, "Magnetek" is the spelling used by the company itself, which we presume to be correct.
[3] Hanover had two experts, Daniel Snow ("Snow") and James Montgomery ("Montgomery"), investigate the fire scene. Snow's deposition appears as Exhibit "A" to the Opposition to Motions for Summary Judgment filed by Hanover. That same pleading also references Montgomery's deposition as being Exhibit "B," and specific page references to the deposition are even made therein. However, that deposition was apparently excluded as an exhibit to that pleading in the record. It was made part of the record as an exhibit to Maida's Motion for Summary Judgment; thus, Montgomery's deposition is a part of the record before us and may be considered on appeal.
[4] Although Hanover makes various claims under the LPLA, we address only the one claim regarding the construction and composition of the UPS. The evidence presented on this point fails to show that Hanover could prove any of the alternate prerequisites under the LPLA.
[5] Although Montgomery's actual report was somehow excluded from the record, his deposition also expresses his opinion regarding the precise cause of the fire.
[6] Sometime after Montgomery's deposition, Trippe named Maida, manufacturer of the MOV, as a third-party defendant.